**Parker L. HANCOCK, Warden, Respondent, Appellant,**

v.

**Russell NELSON et al., Petitioners, Appellees.**

**No. 6524.**

United States Court of Appeals First Circuit.

Heard Sept. 14, 1966.

Decided July 8, 1966.

Aldrich, Chief Judge, dissented.

Alexander J. Kalinski, Asst. Atty. Gen., with whom William Maynard, Atty. Gen., was on brief, for appellant.

Julius Soble, Boston, Mass., with whom Richard W. Leonard, Nashua, N. H., was on brief, for Fred J. Martineau, appellee.

Leo Patrick McGowan, Providence, R. I., with whom John P. Bourcier, Providence, R. I., and Richard W. Leonard, Nashua, N. H., were on brief, for Russell Nelson, appellee.

Before ALDRICH, Chief Judge, J. WARREN MADDEN, Senior Judge of the United States Court of Claims,* and JULIAN, District Judge.

## OPINION

MADDEN, Judge:

The United States District Court for New Hampshire has granted the appellees' petition for a writ of habeas corpus. The warden who has the appellees in custody has brought this appeal. We conclude that the writ should not have been

---

* By designation.

granted, and we reverse the judgment of the district court.

The appellees were tried and, on November 9, 1959, were convicted in the State court of New Hampshire of the crime of murder, and were sentenced to death by hanging. On November 30, 1961, their convictions were affirmed by the Supreme Court of New Hampshire. State v. Nelson, 103 N.H. 478, 175 A.2d 814, cert. den. 369 U.S. 879, 881, 82 S.Ct. 1153, 8 L.Ed.2d 282, May 14, 1962. On August 22, 1962, they filed in the United States District Court for New Hampshire petitions for writs of habeas corpus. On October 22, 1962, these petitions were denied for failure to exhaust state remedies.[1] On October 28, 1962, the appellees moved, in the State trial court, for a new trial. The motion was denied. They appealed to the Supreme Court of New Hampshire from the denial. That court, in State v. Nelson, 105 N.H. 184, 196 A.2d 52, rejected the appeals on December 20, 1963. The Supreme Court of the United States denied certiorari, 377 U.S. 1001, 84 S.Ct. 1936, 12 L.Ed.2d 1050, on June 22, 1964.

On October 7, 1964, the petition for the writ of habeas corpus, here involved, was filed in the United States District Court for New Hampshire. The writ was granted on March 1, 1965. The warden's appeal to this court was timely.

The district court granted the writ because, it concluded, the appellees' federal constitutional rights had been violated in the following regards: the admission in evidence in the State court murder trial of evidence of blood and other foreign matter on the clothing of each of the appellees, and, as to the appellee Nelson, the admission in evidence of certain incriminatory statements made by him.

On February 9, 1959, at 12:51 a. m. the appellee Nelson, a resident of Rhode Island, was picked up for questioning by the New Hampshire police in downtown Nashua, New Hampshire. The circumstances of his being there were suffi- ciently suspicious to justify his detention under an applicable New Hampshire statute. The police booked him for "questioning" and held him in jail.

At 3:50 a. m. on the same date the appellee Martineau, also a resident of Rhode Island, and in Nashua under suspicious circumstances, was detained by the police and similarly booked and jailed. The circumstances giving rise to the suspicions which caused the appellee's detention are related in the decisions of the Supreme Court of New Hampshire hereinabove cited.

At noon on February 9, the appellees still being in custody, the body of a man who had apparently been murdered was found in a parked automobile not far from the places where the appellees had been picked up by the police.

At 2 p. m. on the same day appellee Nelson was questioned by the police, was asked to surrender his clothing for examination by the police, and did so without manifest objection. At 4 p. m. on that day the same thing occurred with regard to Martineau's clothing.

Laboratory examination disclosed that there was blood on the appellees' clothing and also particles of materials from the floormats of the murdered man's automobile and from his plastics factory in Rhode Island.

The appellees were indicted for the murder, and the evidence obtained from their clothing, and other evidence, was introduced against them. They were convicted and sentenced, as we have stated.

Federal district courts have only such jurisdiction as Congress, by statute, has conferred upon them. This statement is as valid with regard to the district courts' jurisdiction to grant petitions for writs of habeas corpus as it is with regard to any other action which a district court is requested to take. Our text, then, must be the federal statute conferring habeas corpus jurisdiction upon the courts. Section 2241 of Title 28

---

1. 28 U.S.C. § 2254.

of the United States Code is the pertinent provision. It says:

\* \* \* \* \* \*

(c) The writ of habeas corpus shall not extend to a prisoner unless—

\* \* \* \* \* \*

(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

We think the United States District Court allowed itself to be diverted from the only question properly before it, viz., the constitutionality under the United States Constitution of what the courts and the police of New Hampshire had done with regard to these appellees. The district court's opinion contains many references to the New Hampshire statutes. We quote the statutes in a footnote.[2] But we think they are irrelevant. Whether these New Hampshire statutes, as interpreted either expressly or *sub silentio* by the Supreme Court of New Hampshire, were interpreted and applied as the United States District Court would have interpreted and applied them, if that had been its task, is none of the business of a United States court. For example, if the New Hampshire courts

choose to regard what is put down or not put down on the books at the police stations as unimportant; if they choose to consider that, if one is already in custody and facts are learned by the police which would justify his arrest for murder, the fact that he is in jail and should be kept there makes it unimportant whether there is a changed entry on the books or not—these are not matters of federal law.

When at 2 p. m. Nelson and at 4 p. m. Martineau were asked to surrender their clothes, they were in custody; the police had and since noon had had grounds on which they would have arrested them if they had been at large; if they had been arrested at large and brought to the police station the police could have taken their clothes for testing[3], because the murder, no matter who committed it, had been a bloody affair. Whether the clothes were surrendered voluntarily or not is unimportant. We conclude that the clothes evidence, obtained by lawful search of arrested persons, was admissible, unless a contrary conclusion is compelled by a circumstance which we now discuss.

The officer in charge of a police station to which an arrested person is brought shall *immediately* secure from the prisoner, if possible, the name of the parent or nearest relative, or friend or attorney with whom the prisoner may desire to consult, and *immediately* notify such relative, friend or attorney of the detention of the prisoner, when possible. Notice shall be given by telephone or messenger when practicable. RSA c. 594: 16 CONFERENCE WITH FRIENDS OR COUNSEL
Such officer shall permit the prisoner to confer with his relatives, friends and attorney at all reasonable times.

3. Robinson v. United States, 1960, 109 U.S.App.D.C. 22, 283 F.2d 508, cert. den. 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259; Dawson v. United States, 365 U.S. 827, 81 S.Ct. 716, 5 L.Ed.2d 707, and Williams v. United States, 365 U.S. 830, 81 S.Ct. 718, 5 L.Ed.2d 708, see United States v. Guido, 7 Cir., 1958, 251 F.2d 1, cert. den. 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843. See also Schmerber v. State of California, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826.

2. RSA c. 594: 1 DEFINITIONS
Arrest: is the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime.
RSA c. 594: 2 QUESTIONING AND DETAINING SUSPECTS
(a) A peace officer may stop any person abroad whom [sic] he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going.
(b) Any person questioned as provided in subsection (a) who fails to identify himself and explain his actions \* \* \* may be detained and further questioned and investigated.
(c) In no case shall the total period of detention provided for by subsections (a) and (b) exceed *four hours*. Such detention shall not constitute an arrest and shall not be recorded as such in any official record. At the end of any such detention period the person so detained shall be released unless arrested and charged with a crime.
RSA c. 594: 15 NOTICE OF ARREST

To state the problem bluntly, it is urged on behalf of the appellees that all evidence obtained from each of them after the four hours of detention for questioning authorized by the New Hampshire statute was obtained in violation of the Constitution of the United States and was therefore inadmissible. As we have explained, the statutory four hour provision cannot be a constitutional standard. The several states have various statutory times set for questioning, or for taking an arrested person before a magistrate. If a specified length of time is too long to be federally constitutional, it cannot make any difference whether the delay occurred in New Hampshire, where the state statute was violated, or in another state where it was not. In each state the State courts are, of course, free to attach whatever effects they choose to violations of statutes of this kind. But they are not free to attribute such judgments to the requirements of the Constitution of the United States unless an equivalent judgment would be constitutionally compelled in every other state on the same set of facts, no matter what periods were set by the State statute.

The Supreme Court of New Hampshire did not discuss the problem we are now discussing, which is, whether Nelson and Martineau, from the times when they were picked up by the police at 12:51 a. m. and 3:50 a. m. respectively until good cause for their arrest for murder was disclosed at noon, which periods of detention considerably exceeded the four-hour period set by the New Hampshire statute, were unconstitutionally detained during the intervening excess period. We recognize that during that excess period the police had no valid reason for holding them. Was it a violation of the United States Constitution for New Hampshire to so hold these appellees?

▇▇ We have it on the highest authority that it was not a violation of the Constitution. In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court reversed a conviction because the accused was not taken promptly before a magistrate, as the federal statute required, and during the period of unlawful delay confessed the crime, and the confession was used against him in his trial. The Supreme Court, in McNabb, expressly disclaimed laying down a rule of constitutional law. It based its decision upon its supervisory powers over federal court trials. In Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Court based a similar reversal, not on the Constitution, but on Rule 5(a) of the Federal Rules of Criminal Procedure. In Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958), Mr. Justice Clark, in the opinion of the Court, stating what does not make a confession involuntary and inadmissible, said, "Neither does * * * the failure of state authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate." In Fikes v. State of Alabama, 352 U.S. 191, 194, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957), Chief Justice Warren, for the Court, clearly recognizes that the consequences of the violation of such a state statute are a matter for state law.

To the suggestion that it makes a difference whether, as in McNabb, Mallory and Crooker, the detention originated in a lawful arrest or, as in the instant case, in a lawful detention for questioning, we can only say that we cannot see that the difference is material. In all the cases the accused was in jail in violation of the statute when his defense collapsed around him. The event, for Nelson and Martineau, was the discovery of the murder. In McNabb, Mallory and Crooker it was their confessions. The evidence in all the cases was heavily damaging to the accused persons, but the Supreme Court has repeatedly said that it was not inadmissible on federal constitutional grounds.

▇▇ As we have seen, the states are not obligated by the federal Constitution to exclude evidence obtained during periods of detention in excess of the periods set by their state statutes. A state could, of course, by its own judicial decision or

254

statute, exclude such evidence. We are not aware of any state's having done so. In the case of Rogers v. Superior Court, 46 Cal.2d 3, 10, 291 P.2d 929, Mr. Justice (now Chief Justice) Traynor, for the Supreme Court of California, expressly refused to exclude evidence of a confession obtained during a period of illegal detention by the prosecuting authorities. He cited 19 A.L.R.2d 1332, 1336 to 1346. The author of the A.L.R. material cites cases from Alabama, Arkansas, Nevada, New Jersey, North Dakota, Ohio, Oklahoma, Oregon, Utah, Kentucky, Mississippi, Missouri, Pennsylvania, Tennessee, and Wisconsin, all in accord with the California decision.

In "Later Case Service" in the A.L.R. set, Volume III at page 107, under the heading "McNabb rule inapplicable in state courts," cases from the 3d, 4th, 5th and 6th circuits of the United States Courts of Appeals are cited, as are State court cases from 21 states. They are all in accord with the California decision cited above.

The unanimity of authority cited above related to the admissibility of confessions obtained during periods of illegal detention. In our case there were no confessions or incriminating statements made by the accused men during these periods. In the confession cases there might arguably, in certain situations, be a causal connection between the over-long detention and the confession. The impatience, frustration and confusion involved in the delay might have tended to induce the confession.

■ When, as in the instant case, the evidence obtained during the delay is the body of a murdered man, the fact that his murderers were illegally detained in jail had no causal relation to the existence or location of the body. We have held above that at the time of the surrender by the appellees of their clothing, they were under lawful arrest and subject to constitutional search of their persons. But even if it were not so, and they were still under statutorily illegal detention when they surrendered their clothes, the fact of the detention had nothing whatever to do with the presence of blood and tell-tale bits of fabric and plastic on their clothes and shoes. It may be noted in passing that if other requirements of the New Hampshire statutes regarding notifying their relatives and friends, and permitting consultation of a lawyer, had been complied with by the police, which they were not, relatives, friends, and even lawyers would have been impotent to remove the incriminating evidence.

■ The only event that would have been useful to the appellees, in their plight, would have been to get out of jail and be out long enough to wash or burn their clothes. They say that they had a federal constitutional right to do just that. That puts the Constitution on a low level indeed. What the appellees had was an apparent New Hampshire statutory right to go free after four hours. If the police had set them free, and they had used the meantime prudently, the State would have lost valuable evidence and they might be at large today. But all of that has nothing to do with the Constitution of the United States, or with the habeas corpus powers of a Federal District Court, unless there is a federal constitutional right to destroy evidence. We repeat that, in our view, there is no such right.

The instant case may be the first case in which litigants have had the occasion, combined with the temerity, to urge, in effect, that they had a *constitutional right* to be set free to destroy evidence rather than be held in jail where they could not destroy evidence. Since destroying evidence is the only activity they could have, to their advantage, engaged in during their relatively short period of freedom, that is not an unfair statement of what they lost by being detained.

If the appellees had been released promptly at the end of their four hour periods, they could have been arrested when the body was discovered at noon. Whether the clothing evidence would still have been available would have depended on how they had used their free time. If they had been released at 11 a. m., several hours after the expiration of the

four hour period, and they had immediately set out for Rhode Island but had been intercepted by police responding to an "all points" broadcast made at noon and brought back to Nashua under arrest, their clothing could have been taken from them and used in evidence. Yet they would have the same argument for exclusion which they present here. They were detained over-long by New Hampshire police in violation of a New Hampshire statute. If they had been released not later than 8 a. m., as the statute required, they would not have been intercepted, pursuant to the noon broadcast, before they had reached home in Rhode Island and had destroyed their clothes. The "but for" argument presented in the instant case would be equally applicable, and equally unsound, if the facts had been as we have just stated them instead of as they actually were.

■ Our conclusion is that the admission in evidence of the defendants' clothes violated no federal constitutional rule.

■ An additional contention is made, applicable only to Nelson's case. On February 11, at noon, two days after the beginning of their detention, the appellees were for the first time allowed to "contact" counsel. Early in that afternoon the Attorney General of Rhode Island, Mr. Nugent, visited Nelson at the prison. They were already acquainted, and Nelson made some incriminating statements to Nugent. These statements were not confessions. Later in the afternoon, Nugent again visited Nelson. In answer to Nelson's question whether he could talk to Nugent as a lawyer, and not as Attorney General, Nugent advised him that he could not, that what he might say and what he had said at the earlier visit would be used against him. Thereafter Nelson said nothing more. The incriminating statements which he had made were admitted in evidence at the trial.

At the time Nelson made his statements, the police had probable cause for arrest quite apart from the clothing evidence which, we have said above, was admissible evidence. He was, we think, "under arrest," though the police book-keeping did not show it. When one is in jail and the police have probable cause to keep him there, and an apparent intent to do so, he is in reality "under arrest," whatever the police record may say.

In Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Supreme Court decided that when a person in the custody of the police demands an opportunity to talk to his lawyer, the lawyer being available at the police headquarters, and the prisoner's demand is refused, and he thereafter confesses to the police, his confession is not admissible against him at his trial.

■ As we have seen, the convictions of these defendants were affirmed by the Supreme Court of New Hampshire on November 30, 1961, and their petitions to the Supreme Court of the United States for certiorari were denied on May 14, 1962. The June 20, 1966, decision of the Supreme Court of the United States in the case of Johnson et al. v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, that the requirements of Escobedo do not apply to a case in which the trial began before June 22, 1964, the date of the *Escobedo* decision, makes the *Escobedo* doctrine, as federal constitutional law, inapplicable to Nelson's case. There is no claim that any compulsion other than the *Escobedo* type of compulsion was exerted upon Nelson in connection with his incriminating statements.

The United States District Court was in error in granting the appellees' petition for a writ of habeas corpus. Its decision is reversed, with a direction to dismiss the petition.

ALDRICH, Chief Judge (dissenting).

The court's recitation of the facts, otherwise quite acceptable, might have been clearer if, after stating that the circumstances under which appellees were picked up were sufficiently suspicious to justify detention under the New Hampshire statute, the court had immediately made its important concession that during the subsequent hours of appellees' detention "the police had no valid reason for holding them." This was true not

merely because the statutory four hours for investigation had long expired, but because the grounds on which the suspicion, and hence the detention, had been predicated, had been dispelled even within those four hours. The necessary driver's license had been forthcoming; the possibility that the car had been stolen had been disproved. I cannot believe that the mere fact that a nonresident was on a city street after midnight made him a suspicious person obliged to account for his conduct to the satisfaction of the police or be incarcerated.[1] The court's assertion that New Hampshire could have enacted a statute comparable to some other state's, with a period longer than four hours, seems to me highly questionable, but, in any event, entirely beside the mark. No matter what a statute could provide as a reasonable period for investigation, it could hardly be proper to permit the detention to exceed the existence of the grounds of suspicion. After the police had resolved the question of the car they were detaining appellees without any semblance of grounds, in mere Micawber-like optimism that something would turn up.

I will assume that a stop and frisk statute would be constitutional. See generally, Police Power to Stop, Frisk, and Question Suspicious Persons, 65 Colum. L.Rev. 848 (1965). I could even assume, for present purposes, that a very brief period of detention while the investigation was proceeding, would also not be unconstitutional. This was assumed, without discussion, in Commonwealth v. Lehan, 1964, 347 Mass. 197, 196 N.E.2d 840. But it is fundamentally contrary to all principles of probable cause to say that, by statute or otherwise, a state can convert what is, concededly, not probable cause into something "just as good." However my brethren may state it, they are performing an act of self-levitation. In seeking support from the cases finding no unconstitutional impropriety in delayed arraignments, they are overlooking the fact that prior to and underlying the custody in those cases there was probable cause. This is a basic difference. Probable cause is the constitutionally erected pale that fences in those in whose lives the police may interfere, and protects the rest. It is one thing to say there is no strict constitutional timetable once a defendant is in full, lawful custody It is another to parlay what was, at best, an ephemeral right to temporary detention, any claim to which had long disappeared, into the equivalent of lawful custody. I would go further. Even if the original grounds for suspicion remained, suspicion is not probable cause, and no more than the briefest detention on mere suspicion can be constitutionally justifiable.

If the twelve-hour detention was not constitutionally permissible, then I believe the seizure of appellees' clothes cannot be supported. By any analysis this evidence would seem the direct fruit of the poisonous tree. The clothes were brought within the ambit of police custody by the original detention, and were retained by the unlawful holding of the petitioners. Concededly, not everything that bears any causal relation, however remote, to unlawful police action is attributable thereto. Cf. United States v. Close, 4 Cir., 1965, 349 F.2d 841, cert. den. 382 U.S. 992, 86 S.Ct. 573, 15 L.Ed. 2d 479; Commonwealth v. Palladino, 1964, 346 Mass. 720, 195 N.E.2d 769. The purpose of the "fruits" doctrine is to remove the incentive for police violations of constitutional rights, and if the evidence discovered is so incidental as to preclude even a suspicion that the reason for the detention was the hope of obtaining some such evidence, there may be no reason to exclude it. See generally Developments in the Law—Confessions, 79 Harv.L.Rev. 935, 1024–26 (1966). However, this was not the case here. I cannot go along with the implication in the court's opinion that because the fruit was in a certain sense a

---

1. The statutory and, I believe, common, definition of a suspicious person, is a "person abroad whom [the officer] * * has reason to suspect is committing, has committed or is about to commit a crime * * *."

windfall, it was not forbidden. The police, doubtless, did not realize that they had obtained custody over bloody clothes. On the other hand, clearly they were not detaining petitioners until noontime simply to thwart some as yet unperpetrated offense. They must have felt that evidence of a crime already committed might be forthcoming, and must, in turn, have intended, by detaining the petitioners, to prevent suchever activities as petitioners would otherwise have engaged in to hamper discovery. This should not be condonable by saying that the police did not know what these activities might be, or precisely what evidence might be involved.

Nor can the court whitewash police misconduct by condemning petitioners as asserting "a constitutional right * * * to destroy evidence." The petitioners' claim might be reduced to this if the court could cite a case holding that police violation of fundamental liberties can be vindicated by the later discovery that cause in fact existed. This it cannot do. Wong Sun v. United States, 1963, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441; cf. Rogers v. Richmond, 1961, 365 U.S. 534, 542, 81 S.Ct. 735, 5 L.Ed.2d 760. I am frankly shocked by the court's holding at this date that a detention without pretence of right can be used to produce usable evidence.

The present decision is, of course, a desirable result with respect to convicting these petitioners, for whom, possibly, little can be said. This, however, is not the point. The constitution exists for the unjust as well as the just.

The question whether Nelson's oral statement, made to Nugent after the discovery of probable cause, should also have been excluded is less clear. I might agree with my brethren that the unlawful detention was probably not aimed at eliciting statements after probable cause should appear. Although it may be assumed that but for this detention Nelson would not have been apprehended, and in custody, at this particular time and place, it does not follow that he would never have been arrested, nor that if he had been, he would not have given the same answer to the same question. Nevertheless, the statement was in some sense a product of the unlawful detention. For example, because of the prior twelve-hour incommunicado detention in an out-of-state jail, Nelson may have said something that he would not have said had he been arrested later. These are imponderables, not like the easy situation in Wong Sun v. United States, supra, where, some days after release from an unlawful arrest, a defendant came himself to the station, or the perhaps relatively simple case of Commonwealth v. Palladino, supra, where the defendant was first briefly held by officers of the wrong municipality. I need not, however, resolve this question. If my brethren do not accept what seems to me the obvious case, little purpose is to be served by an academic discussion of the more difficult one. If the petitioners were to be given new trials because of the improper use of the clothing evidence, I assume this oral statement would then be interdicted by *Escobedo*.