## INGRAM v. UNITED STATES.
### No. 9181.

Circuit Court of Appeals, Ninth Circuit.

Sept. 16, 1939.

Fred McDonald, E. J. Dunning, and Sol Abrams, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and S. P. Murman, Asst. U. S. Atty., both of San Francisco, Cal.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment upon conviction of appellant for having morphine in his possession in violation of Section 2c of the Jones-Miller Act, 42 Stat. 596 (21 U.S.C. § 174, 21 U.S.C.A. § 174), and for conspiring in the violation with one Joseph A. Woods. Appellant seeks reversal for a claimed prejudicial cross-examination of his principal witness, his wife, Ann Ingram, tending to degrade her in matters having no relevant connection with the prosecution. The objections to the questions asked and exceptions to the court's rulings sufficiently present for our consideration appellant's contentions.

The morphine was found in an apartment of Woods in an apartment house in San Francisco; also in the apartment were some of appellant's clothing and household linen and his suitcase containing a scale, usable for measuring narcotics, empty capsules, and a radio claimed to be his. The presence of these articles in Woods' rooms and the fact that appellant had a key to the apartment which he used to enter shortly after the federal agents, who were waiting there, had discovered the drug, constituted an important part of the evidence leading to his conviction.

Appellant's defense was that the apartment was leased by Woods and his visit there at the time of his arrest was to obtain his clothes which had been deposited there; that the morphine and other articles were not his and none had been placed by him in his suitcase.

To sustain her husband's defense, Mrs. Ingram testified that she had known appellant's co-defendant Woods since Febru-

ary, 1938, when appellant and herself moved to South San Francisco Auto Court, where they lived in a trailer until April 1, 1938, at which time they moved into an apartment house adjacent to that in which Woods lived. There they stayed until the end of July, 1938. Woods visited them both at the trailer and at the apartment. According to the witness, when appellant and herself moved back to the trailer in the latter part of July, 1938, Woods borrowed appellant's linen for his own apartment. The radio, she said, belonged to Woods. She further testified that appellant's discarded wearing apparel was also taken by Woods to his apartment in appellant's suitcase. Mrs. Ingram stated that on August 16, 1938, appellant, Woods, herself and her sister went on a fishing trip. Before leaving, Woods gave appellant the key to his apartment because appellant wanted to get his clothes. On returning, appellant left Mrs. Ingram at the trailer and went to get his clothes in Woods' apartment. She did not see him again because he was arrested, the agents later arresting her too.

The prosecuting attorney states he feared Mrs. Ingram had made an impression on the jury unfavorable to his case. For some reason not appearing in the record, Mrs. Ingram was permitted to leave the stand at the end of her direct examination. On her return the prosecutor entered into an attempt to impeach the witness. However, the questions addressed to her were not a cross of her direct examination. Instead of being cross-examination, they introduced an entirely new field of discussion, not relevant to the direct examination, namely, the private life of Mrs. Ingram. The method used was an inquiry as to the continuity of the wife's living with her husband during years prior to the charged offense and then questioning as to claimed improprieties in her conduct, inconsistent with that of a continued marital relationship. It is obvious that the main purpose of entering into this area, irrelevant to the direct examination, was to degrade her in the minds of the jury. The prejudicial effect of the questions is obvious. Also it is our opinion that had they not been asked the jury well could have believed her explanation of her husband's presence and that of his belongings in Woods' rooms.

The law is well stated in § 2051 of the California Code of Civil Procedure: "§ 2051. How Impeached. A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." McKune v. United States, 9 Cir., 296 F. 480, 481; Conner v. United States, 9 Cir., 7 F.2d 313, 314; People v. Bell, 96 Cal.App. 503, 506, 274 P. 393, question as to chastity of a prosecutrix for rape; People v. Fleming, 166 Cal. 357, 381, 136 P. 291, Ann.Cas.1915B, 881, use of assumed name.

We hold that the cross-examination was improper, and that, in permitting it, the court committed prejudicial error.

Reversed.