**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lendon Howard MANAR, Defendant-Appellant.**

**No. 18594.**

United States Court of Appeals,
Seventh Circuit.

Dec. 1, 1971.

Patrick J. Delfino, Chicago, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Gregory M. Wilson, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and KERNER, Circuit Judge.

DUFFY, Senior Circuit Judge.

Defendant was charged in a one-count indictment with a violation of 18 U.S.C. § 2314 for allegedly causing the transportation of a forged security from Hamel, Illinois, to Fort Bragg, North Carolina. The jury returned a verdict of guilty and a judgment of conviction was entered.

While defendant did testify at a hearing on his motion to suppress evidence and confessions, he did not testify nor produce witnesses on his behalf at the trial.

On December 31, 1969, at about 9:30 a. m., state trooper Martin noticed an automobile being driven in a weaving motion. He stopped the automobile which was being driven by defendant Manar. Trooper Martin observed an open bottle of liquor on the rear seat of the automobile. Trooper Martin requested a driver's license from Manar whereupon defendant produced a temporary driver's license. The automobile had California license plates affixed. Furthermore, defendant offered no proof that he was the owner of the motor vehicle.

The trooper advised the defendant that he was under arrest for the illegal transportation of alcohol, a state offense, and read to him warnings as to his right to remain silent.[1]

Trooper Martin then escorted defendant to the Sangamon County jail interrogation room. At trooper Martin's suggestion, the defendant emptied his pockets and placed the contents therefrom on a table in the interrogation room. Trooper Martin testified this examination of possessions was normal for the safe-keeping of the valuables of a person under arrest. Defendant permitted the trooper to examine same which revealed a United States Army identification card and a checkbook which had been concealed in a billfold and in a folder respectively. Both were in the name of one Hugh T. Davall. Also there were a number of keys apparently for hotel room doors.

Defendant volunteered the information that he had used Davall's checks to pay for lodging in Kansas City, Missouri, and for a tow truck in Hamel, Illinois that morning. The forged check used to pay for the tow truck in Hamel, Illinois was transported to Fort Bragg, North Carolina and is the violation for which Manar was convicted.

Trooper Martin contacted the FBI and two agents came over to the jail promptly. These agents gave the defendant a Miranda type warning. The defendant told the agents he had made use of the cards and the checks without the owner's permission. He later signed a written statement to that effect after another "Miranda warning."

The United States Attorney's office was contacted and authorization for the filing of a complaint was given, but due to the fact that these events occurred during the New Year Holiday, no judge or commissioner could be found to sign the complaint. Defendant was then booked into the County Jail on state charges.

Defendant was arrested on New Year's eve, a Wednesday night. A federal complaint charging violation of 18 U.S.C. § 2314 was filed against defendant on Friday of the same week. The entire span of five days that defendant was incarcerated included two holidays and a Sunday. Defendant was released into federal custody on the following Monday and was promptly brought before a United States Commissioner.

■ There is no support in the record for defendant's charge that there was a "working arrangement" between state authorities and the Federal Bureau of Investigation (FBI). Anderson v.

---

1. The warning given included "* * * you have the right to remain silent. Anything you say can and may be used against you in a Court of law. You have the right to talk to a lawyer and have him present when (sic) while you are being questioned. If you cannot afford to hire a lawyer, if you wish one, a lawyer will be appointed to represent you before any questions."

United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943). True it is that local police notified the FBI of a possible federal crime. Such an interchange of information is normal. United States v. Davis, 437 F.2d 928, 931 (7 Cir., 1971). We feel there was no common design or purpose between the state authorities and the FBI.

■ Defendant admits the legality of his arrest, but questions the legality of the search of his possessions at the jail subsequent to his arrest. The evidence showed the defendant was taken to the jail immediately after his arrest and was asked by the arresting officer to empty his pockets immediately upon entry of the jail house. Thereafter, defendant consented to the inspection of his personal items by the arresting officer. Defendant asserts this inspection by the officer was violative of his Fourth Amendment rights.

We are confronted with a search made at a jail shortly after a valid arrest and a requisite Miranda warning. This Circuit has not heretofore decided this exact point, but the First, Second, Fifth, Eighth, Ninth, Tenth and District of Columbia Circuits have held the arrest of a person destroys the privacy of that individual for a reasonable time and to the reasonable extent of police interest in weapons, means of escape and evidence.[2]

The United States Supreme Court considered a similar situation to the case before us in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). It was held there by the Supreme Court that the search of an alien after arrest and after being taken to Immigration and Naturalization headquarters was valid.

The record shows that the Government agent testified: " * * * and at that time I asked him to empty his pockets on the desk, which he did. I asked him if he had any objections to my looking at these items. He said he did not." There is no testimony in the record which contradicts this statement in any way, and we find that the search was consented to by the defendant.

■ Defendant Manar gave three statements to authorities which inculpated him with the federal crime as charged. One statement was given to the state officer upon his arrest and prior to his prompt delivery to the jail, and two statements were given to the FBI, one oral and one written. From the evidence it is clear that a "Miranda-warning" preceded each statement by the defendant. Defendant urges that the state police officer erred in not warning him immediately before questioning him at the jail about the personal items in his possession. Therefore, defendant argues, the subsequent statements to the FBI fail to meet constitutional standards because the first statement so failed.

The arresting officer gave the defendant a proper Miranda-warning upon arrest and less than one hour later received defendant's statement at the jail. We believe the defendant was properly advised and fully cognizant of his constitutionally protected rights revealed in a valid Miranda-warning.

The judgment of conviction is affirmed.

2. United States v. DeLeo, 422 F.2d 487 (1 Cir., 1970) ; United States v. Frankenberry, 387 F.2d 337 (2 Cir., 1967) ; United States v. Gonzalez-Perez, 426 F.2d 1283 (5 Cir., 1970) ; Rodger v. United States, 362 F.2d 358 (8 Cir., 1966) ; Cotton v. United States, 371 F.2d 385 (9 Cir., 1967) ; Malone v. Crouse, 380 F.2d 741 (10 Cir., 1967) ; Shelton v. United States, 131 U.S.App.D.C. 315, 404 F.2d 1292 (D.C.C.A.1968).