**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eugene Howard EDWARDS,**
**Defendant-Appellant.**

**No. 72–1219.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1972.

Decided March 8, 1973.

Byron E. Trapp, Asst. U. S. Atty., Cincinnati, Ohio, for defendant-appellant; William W. Milligan, U. S. Atty., Cincinnati, Ohio, on brief.

Thomas R. Smith, Court appointed, Cincinnati, Ohio, for plaintiff-appellee.

Before CELEBREZZE, McCREE and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant appeals from his conviction in a jury trial of attempted breaking and entry of a United States Post Office in violation of 18 U.S.C. § 2115. On May 21, 1970, at about 10:50 p. m. Patrolman Ashley of the Lebanon, Ohio Police Department was on duty in his cruiser and received a radio transmission advising him that a suspicious tan Plymouth with out-of-town license plates was parked on South Sycamore Street near the Post Office Building, that three men were seen leaving the vehicle and that two persons had been seen at a meat locker at the intersection of South Street and South Sycamore Street. Ashley examined the Plymouth, found it empty, checked the meat locker and found nothing amiss there.

Patrolman Ashley then drove northward on South Sycamore Street to Main Street, east on Main Street to the alley that runs in a north-south direction behind the Lebanon Post Office and turned south down the alley. Upon reaching the intersection of the alley and the Post Office driveway, Ashley then turned into the driveway. He went in back of the building, checked the windows there and along the side of the building.

Upon reaching the west sidewalk of Broadway, he looked to his left and observed two men, one of whom was the Appellant Edwards, on the west sidewalk of Broadway at a point approximately even with the extension of the north line of the Post Office building. At the time Ashley first observed them Edwards and his companion had their backs to him and were walking in a northerly direction on the West sidewalk of Broadway. They walked in a normal manner without looking over their shoulders or turning around to the intersection of Broadway and Main Street where they crossed Main Street to the northwest corner of the intersection and then turned west on the north sidewalk of Main Street.

When Edwards had reached and crossed the alley that intersects Main Street, Ashley received a radio transmission advising him that the burglar alarm system at the Post Office had

been activated. He immediately over-took and apprehended Edwards and his companion, placed the two men in his cruiser and returned to the Post Office. Shortly thereafter Ashley took Edwards to the Lebanon Police Station where he was placed in a cell. Patrolman Ashley testified that approximately three minutes elapsed from the time he first observed Edwards on the sidewalk to the time that he received the radio transmission advising him that the Post Office burglar alarm had been activated.

On the same evening an investigation by Ashley and several other members of the Lebanon Police Department, including Captain James Toller, who took paint samples from the window sill and the wire mesh screen, revealed that an attempt had been made to gain entrance through a window located on the north side of the building. On the following morning the Lebanon Police Department purchased new clothing for Edwards and took from him the clothing he was wearing at the time of his arrest.

Subsequent microscopic comparison of paint chips obtained from Edwards' clothing with chips from the vicinity of the damaged Post Office window made by the Ohio Bureau of Criminal Identification and Investigation revealed significant similarities. The paint samples were also examined microscopically and by means of a process known as neutron activation analysis at the Post Office laboratory in Washington, D. C., which indicated that such samples came or originated from the same source.

A motion to suppress the paint chips found in Edwards' clothing was filed and, following an evidentiary hearing, was overruled.

The alarm system at the Lebanon Post Office was triggered by sound and is silent in that nothing occurs at the Post Office to indicate that the alarm has been activated. By means of a wireless transmitter an alarm bell is sounded in the home of a nearby resident.

Two issues are raised on this appeal. First, Appellant contends that Patrol-man Ashley did not have probable cause to arrest him and that his arrest was therefore unlawful. Second, Appellant contends that the seizure and search of his clothing was unlawful because it was made after he had been in custody for ten hours. We reverse the determination of the District Court that the seizure of the clothing was lawful.

■ We first examine the question concerning the validity of the arrest. Whether an arrest is constitutionally valid depends upon "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ The problem posed by this case, as it was in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), is determining where the line is to be drawn between mere suspicion and probable cause. The Supreme Court in Brinegar, supra, said ":[t]hat line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account of all the circumstances." 338 U.S. at 176, 69 S.Ct. at 1311. We think that under the facts of this case, there was probable cause to arrest the Appellant. He and his companion were seen directly in front of the Post Office three minutes before the message came that the alarm had gone off. They were the only persons observed by the officer in that vicinity and it was late on a Sunday night when few people were on the street. Patrolman Ashley testified that it appeared as though the two men had just turned out of the drive leading to the Post Office. We hold that probable cause for the arrest existed at the time Appellant was apprehended.

It next must be determined whether the removal and testing of Appellant's clothing for paint chips without a warrant was lawful.

■ We start with the premise that, absent some exception, a search or seizure cannot lawfully be made without the prior issuance of a warrant. The Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reiterated this premise:

> Thus the most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or "extravagant" to some. But the values were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won—by legal and constitutional means in England, and by revolution on this continent—a right of personal security against arbitrary intrusions by official power. If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important. 403 U.S. at 454–455, 91 S.Ct. at 2032.

■ The two basic exceptions to the rule are those searches and seizures made incident to a lawful arrest and those made during the existence of exigent circumstances.

We begin with an examination of the "search incident" exception. It is contended by the Government that Appellant's clothing was seized incident to his arrest.

■ A search conducted incident to a lawful arrest must be limited to a carefully defined area, Chimel v. California, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and must be substantially contemporaneous with and confined to the immediate vicinity of the arrest. Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Coolidge v. New Hampshire, *supra*, 403 U.S. at 456, 91 S.Ct. 2022. In Chimel v. California, *supra*, the Supreme Court substantially restricted the "search incident" exception to the warrant requirement. The Court defined the proper extent of a search incident to an arrest:

> "A similar analysis underlies the 'search incident to arrest' principle, and marks its proper extent. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible

evidence." 395 U.S. at 762, 763, 89 S.Ct. at 2040.

The Court reviewed the test of reasonableness as approved in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and determined that a reasonableness test cannot be substituted for the Fourth Amendment:

> "Thus, although '[t]he recurring questions of the reasonableness of searches' depends upon 'the facts and circumstances—the total atmosphere of the case,' [citation omitted], those facts and circumstances must be viewed in the light of established Fourth Amendment principles." 395 U.S. at 765, 89 S.Ct. at 2041.

■ The concern of the Court in *Chimel* was that the reasonableness test had permitted searches beyond the arrested person himself and the area within his immediate control. Even under the *Chimel* rationale, however, "a search of the person of an arrestee and of the area under his immediate control could be carried out without a warrant. [The Court] did not indicate there . . . that the police must obtain a warrant if they anticipate that they will find specific evidence during the course of the search." Coolidge v. New Hampshire, 403 U.S. 443, 482, 91 S.Ct. 2022, 2046, 29 L.Ed.2d 564 (1971). In the present case the search did not extend beyond the person of the Appellant. The clothing seized and searched certainly was within his immediate control and probable cause existed to believe that paint chips would be found on the clothing. The Supreme Court has rejected the distinction between mere evidence and instrumentalities, fruits of crime or contraband found during a lawful search,

as long as there is a nexus "between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L. Ed.2d 782 (1967). In this case, there was cause for such a belief. Appellant's clothing could, therefore, properly have been the subject of a search incident to a lawful arrest, because it was within the limited area defined in Chimel v. California, *supra*.

The question remains, however, as to whether the seizure was substantially contemporaneous with and confined to the immediate vicinity of the arrest. The removal of Appellant's clothing did not occur until some ten hours after his arrest.[1] In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Supreme Court said:

> "Once an accused is under arrest and in custody, than a search made at another place, without a warrant, is simply not incident to the arrest." 376 U.S. at 367, 84 S.Ct. at 883.

While *Preston* involved the search of an automobile, the same rule is applicable to the search of an individual. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). Some Courts have distinguished *Preston* and rendered contrary decisions. In United States v. Caruso, 358 F.2d 184 (2d Cir. 1966), the Court found that the removal and search of the Appellant's clothing at the police station some six hours after his arrest did not violate his Fourth Amendment

---

1. Several courts have held that laboratory testing of the clothing of a jailed person without a warrant is permissible. Hancock v. Nelson, 363 F.2d 249 (1st Cir. 1966); Golliher v. United States, 362 F.2d 594 (8th Cir. 1966); Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812 (en banc 1965); Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508 (1960), cert. denied 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259; United States v. Guido, 251 F.2d 1 (7th Cir. 1958). In these cases the court was not presented with the constitutional problem of the time delay presented here.

rights.[2] *Also see* Miller v. Eklund, 364 F.2d 976 (9th Cir. 1966). And in United States v. Williams, 416 F.2d 4 (5th Cir. 1969), the Court upheld a seizure of clothing made several hours after the arrest for the purpose of laboratory testing, because the seizure was "an integral part of, and therefore incident to, the process of arrest." 416 F.2d at 8. *See* United States v. Gonzalez-Perez, 426 F.2d 1283, 1287 (5th Cir. 1970). We do not agree with this approach. The exception to the warrant requirement is that the search be incident to the arrest. We do not find that a seizure of clothing made long after the events of the arrest have ended can be an integral part of the arrest. While circumstances might render it possible that

> "[a] search of an arrestee is still incident to an arrest when it is conducted shortly thereafter at the jail or place of detention rather than at the time and place of arrest," United States v. Gonzalez-Perez, *supra*, 426 F.2d at 1287,

a search cannot be incident to an arrest after the administrative process and the mechanics of the arrest have come to a halt and the prisoner is in jail. At this point, the justifications for the "search incident" exception no longer exist. It is well to recall these justifications as stated in Preston v. United States, *supra*, and reiterated in Chimel v. California, *supra*:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." 395 U.S. at 764, 89 S.Ct. at 2040.

The Supreme Court in Coolidge v. New Hampshire, *supra*, again recognized that the search incident exception is based on these justifications:

> "The Court [in *Chimel*] applied the basic rule that the 'search incident to arrest' is an exception to the warrant requirement and that its scope must therefore be strictly defined in terms of the justifying 'exigent circumstances.' The exigency in question arises from the dangers of harm to the arresting officer and of destruction of evidence within the reach of the arrestee." 403 U.S. at 478, 91 S.Ct. at 2044.

Nor can the seizure be deemed a matter of reasonable police practice pursuant to a lawful arrest. In *Coolidge* the Supreme Court rejected such a theory:

> The rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a

---

2. The Court in *Caruso* distinguished the holding in *Preston:*

> "Appellant argues on the basis of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), that it is the time lapse of about six hours between the moment of arrest and the final taking and holding of his clothes by the F.B.I. which violated his Fourth Amendment Federal Constitutional rights. But this case is distinguishable from *Preston* because there the question concerned the search of an automobile long after the defendants had been put in jail. Here the clothes were constantly in sight, were taken on the person of the suspect at the time of arrest and were continuously in custody. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Barone, 330 F.2d 543, 544 (2d Cir. 1964), cert. denied 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964).
>
> The appellant's contention means that the seizure of his clothing could have been made constitutionally only if, immediately on his arrest, he had been stripped to the buff on the public highway. Even though that April 13th may have been a very pleasant spring day, we are of the opinion that the argument is somewhat extreme." 358 F.2d at 185–186.

few specifically established and well-delineated exceptions," is not so frail that its continuing vitality depends on the fate of a supposed doctrine of warrantless arrest. The warrant requirement has been a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow "weighed" against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the "well-intentioned but mistakenly over-zealous executive officers" who are a part of any system of law enforcement. If it is to be a true guide to constitutional police action, rather than just a pious phrase, then "[t]he exceptions cannot be enthroned into the rule." United States v. Rabinowitz, *supra*, . . . (Frankfurter, J., dissenting). The confinement of the exceptions to their appropriate scope was the function of Chimel v. California, 403 U.S. at 481, 91 S.Ct. at 2046.

In determining whether a search or seizure falls within one of the established exceptions to the warrant requirement, the burden is on the party claiming the exception to show that the circumstances permit an exception to the rule. This is not an arbitrary requirement. The Supreme Court has continually emphasized the importance of the constitutional requirement:

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. . . . And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." Chimel v. California, 395 U.S. at 761, 89 S.Ct. at 2039, 23 L.Ed.2d 685 quoting from McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

To find that the seizure of Appellant's clothing was made incident to his arrest would require us to engage in the fiction that time was frozen for a period of ten hours or until the police could obtain substitute clothing. We hold that such a fiction is not permitted under the limited scope of the search incident exception. As the Supreme Court said in Coolidge, quoting from Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1886):

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." 403 U.S. at 454, 91 S.Ct. at 2031.

We determine that the seizure of Appellant's clothing was not conducted incident to his arrest.

It has been suggested that the warrantless seizure of Appellant's clothing was permitted because of the existence of some exigent circumstances. We are unable to determine, however, what those circumstances might be. The burden, of course, lies with Appellee to show the existence of exigent circumstances. "We cannot be true to [the] constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948); Coolidge v. New Hampshire, *supra*, 403 U.S. at 455, 91 S.Ct. 2022, 29 L.Ed.2d 564.

Appellant had been in custody for ten hours when his clothing was seized. He presented no danger to the police during this period. After substitute clothing had been purchased, it was not imperative that the clothing be seized without a warrant. Any additional time that would have been needed to obtain a warrant would have been very small in comparison with the period of time Appellant had already been in the jail. Nor is it likely that any additional time would even have been required, in view of the fact that ten hours had elapsed.

> "[T]he police must, whenever practicable, obtain judicial approval of searches and seizures through the warrant procedure, . . . and . . . [t]he scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Chimel v. California, *supra*, 395 U.S. at 762, 89 S.Ct. at 2039; Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

We find no exigent circumstances existed which prevented the police from obtaining the necessary warrant.

One final consideration is whether Appellant could be held to have consented to the surrender of his clothing, as was the holding in Clarke v.

Neil, 427 F.2d 1322 (6th Cir. 1970). We do not find that Appellant's status as a prisoner permits the inference that he consented to the removal of his clothing.

In view of the foregoing, we find that the seizure of Appellant's clothing was not made pursuant to any exception to the rule requiring that a warrant be obtained. We remand to the District Court with instructions to grant Appellant's motion to suppress the evidence obtained by the unlawful seizure of Appellant's clothing.