UNITED STATES of America,
Plaintiff-Appellee,

v.

Keith Edward ALLENDE, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Serito Trujillo MONTOYA, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Donna Rae SILSBEE, Defendant-
Appellant.

Nos. 73–1800 to 73–1802.

United States Court of Appeals,
Ninth Circuit.

Nov. 5, 1973.

# 1352

Frank O. Bell, Jr., Asst. Federal Public Defender, (argued), San Francisco, Cal., for defendant-appellant Silsbee.

Richard S. Platz, (argued), Claude O. Allen, Oakland, Cal., for defendant-appellant Montoya.

Jules F. Bonjour, Jr., (argued), of Bonjour, Gough & Stone, Oakland, Cal., for defendant-appellant Allende.

Dennis Michael Nerney, Asst. U. S. Atty., (argued), James L. Browning, Jr., U. S. Atty., F. Steele Langford, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS and CHOY, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

Defendants appeal from convictions on several counts of an indictment charging violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. §§ 801 et seq.

On October 1, 1972, a customs dog at San Francisco International Airport alerted officials to the fact that a crate addressed to Donna Silsbee, 422 Hawthorne, Apt. 106, Oakland, California, might contain contraband. An exploratory search of the crate revealed the presence of hashish. Customs officials notified Silsbee by form letter of the crate's arrival. U. S. Customs Special Agent Cox wrote on the notice a request that Silsbee call if she was unable to pick up the crate before the weekend.

On October 5, 1972, Agent Cox prepared an affidavit for a warrant to search Silsbee's apartment, the prospective destination of the crate. The affidavit alleged that the crate would be concealed at that address and that the search warrant would not be executed unless there was confirmation that the trunk was taken into the apartment. A search warrant was issued for Silsbee's apartment on October 5, 1972.

On October 9, 1972, observed by customs agents, the three appellants picked up the crate and returned to Silsbee's apartment. Allende and Montoya unloaded the crate and carried it into the apartment. Montoya then went to a retail store, purchased numerous hand tools, and returned to the apartment.

Approximately 45 minutes after the crate had been taken into the apartment, customs agents, armed with the search warrant, broke through the door and arrested the appellants and seized the contraband.

Prior to trial the appellants made motions to suppress evidence. The trial court ruled the prospective search warrant invalid, but found probable cause for the arrest of the appellants and compliance with the statutory requirements for entry. 18 U.S.C. § 3109. The contraband and weapons found in plain view were admitted into evidence.

 It is now urged that the search was invalid because in the 45-minute period between the time when the crate arrived and the time when the entry was made a search warrant could have been obtained. For a two-year period in our constitutional history a seizure made as an incident of a lawful arrest was invalid even as to evidence in plain view of the arresting officer, if the officer had had an opportunity to procure a search warrant. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). Trupiano was expressly repudiated in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Rabinowitz in turn was repudiated in Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), to the extent that Rabinowitz justified a search beyond an area imme-

---

* The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

diately adjacent to the person arrested. We do not, however, understand that *Chimel* revitalized the doctrine of *Trupiano* and vitiated any warrantless seizure in cases where a search warrant might have been obtained. Rather it seems [1] from the language employed in Coolidge v. New Hampshire, 403 U.S. 443, at 465, 91 S.Ct. 2022, at 2037, 29 L.Ed.2d 564 (1971), that "an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant." [2]

It is further urged that the arresting officers did not comply with the provisions of 18 U.S.C. § 3109 [3] relating to the execution of search warrants but made applicable to arresting officers by the case law.[4] There was evidence from which the court could find that the officers knew defendants were in the apartment, that an officer did knock as loudly as he could with his bare hand and did in a loud voice say, "Federal officers with a warrant. Open up." A few seconds later scampering sounds were heard, and a few seconds after that, there having been no response within the apartment, the officers knocked the door in. About ten seconds elapsed between the knock and the entry.

There need be no affirmative refusal of admittance under the statute. The refusal may be implied. There are no set rules as to the length of time which an officer must wait before using force. McClure v. United States, 332 F. 2d 19 (9th Cir. 1964). We are unable to say under the circumstances of this case that the officers were unreasonable in expecting some positive response to their demand within ten seconds, or that the ruling of the trial judge on this issue was clearly erroneous.[5]

At the close of the Government's case the trial court instructed the jury that before it could consider the declarations of one coconspirator as against another it would first be required to find beyond a reasonable doubt that a conspiracy did exist.[6] In connection with this instruction the court told the jury that there was sufficient evidence from which it could find the existence of the conspiracy.[7] Objections were made and the court then made it abundantly clear that the conspiracy problem was for the jury.[8]

---

1. *See* United States v. Edwards, 474 F.2d 1206 (6th Cir. 1973); United States v. Johnson, 475 F.2d 977, 982 (D.C.Cir. 1973) (dissenting opinion), n. 8.

2. Having found that the seizure was properly incident to the arrest we do not consider whether the warrant was invalid because the articles to be seized had not arrived at the place to be searched at the time the warrant was issued.

3. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

4. Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

5. *See* United States v. Harrison, 487 F.2d 389 (9th Cir. decided July 19, 1973).

6. Error is not asserted on the ground that the fact questions preliminary to the admission of evidence should be decided by the court (Carbo v. United States, 314 F.2d 718 (9th Cir. 1963); United States v. Knight, 416 F.2d 1181 (9th Cir. 1969)) and that the practice of submitting these preliminary questions to the jury is not approved in this circuit.

7. "I do find, as a matter of law, that there has been sufficient evidence presented to justify you—I'm not saying you should—to justify the jury in finding a conspiracy. I'm not saying that the evidence establishes a conspiracy beyond a reasonable doubt. That's for you to decide. I'm simply saying that there's enough to justify your finding that a conspiracy existed." Tr. p. 315.

8. " . . . It is for the jury and not the Court to decide whether or not there was any conspiracy. All that the Court now indicates is that if the jury does decide that there was a conspiracy, for the purposes charged in the indictment, either or both conspiracies, if the jury makes that decision, which the jury can, but doesn't have to, then any statement or act of any defendant made in furtherance of that conspiracy may be considered as applying to all the parties to the conspiracy. Now, I think that that's about what I said before, but

■ In light of the entire charge and of the evidence we find the error, if any, in the instruction to be harmless. In United States v. Green, 295 F.2d 280 (6th Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 387 (1962), and United States v. Blue, 430 F.2d 1286 (5th Cir. 1970), convictions were affirmed where instructions similar to those challenged here were given.[9] Neither United States v. Womack, 454 F.2d 1337 (5th Cir. 1972), nor United States v. Garaway, 425 F.2d 185 (9th Cir. 1970), upon which defendants rely, are factually similar to this case.

■■ Defendant Allende urges error in the court's refusal to grant his motion to sever made after the conclusion of the prosecution's case. The defendant Silsbee took the stand in her own defense and gave evidence damaging to Allende. For the purpose of impeaching and thereby diminishing the value of her unfavorable evidence Allende wanted to prove that there had been found in Silsbee's apartment at the time of the arrest some hashish other than that which had been in the cabinet and which was in plain sight. A motion to suppress joined in by Allende had been granted as to this hashish. Prior to Allende's cross-examination of Silsbee the trial court ruled that on cross-examination of Silsbee Allende might inquire as to the other piece of hashish but that he could not, in the event of Silsbee's denial, use the suppressed evidence to impeach her. It is Allende's theory that had the severance been granted and had Silsbee denied possession of the other hashish Allende might then have used the suppressed evidence to impeach Silsbee and that hence Allende was prejudiced by the court's refusal to sever. The theory fails because Allende's rights to cross-examine and impeach Silsbee were not impaired by the court's ruling. At this time in the federal courts a witness may not be cross-examined as to acts of misconduct not resulting in a felony conviction. Ingram v. United States, 106 F.2d 683 (9th Cir. 1939); United States v. Provoo, 215 F.2d 531 (2d Cir. 1954). The proposed Rules of Evidence §§ 608–609 (Moore's Federal Practice, Temporary Pamphlet, 1973) may broaden the existing rule by permitting cross-examination of a witness as to acts of misconduct clearly probative of untruthfulness. Here, even assuming that questions as to the possession of hashish would bear upon Silsbee's untruthfulness, the Proposed Rules would not, upon her denial of the possession, permit extrinsic proof. It follows that the trial court did not deny to Allende any rights under either existing or proposed rules of evidence and that the refusal to sever was not error.[10]

Silsbee's motion for severance made at the close of the evidence was denied. She urges that the refusal to sever coupled with the court's order directing that no comment be made upon the failure of

if it isn't, just consider that and no more. The Court is not instructing you that there was a conspiracy. That's your department. The Court is instructing you that if you do find there was a conspiracy, you may do it only upon the evidence in this Court and the conspiracy, if you find any defendant guilty on that count, or the defendants guilty on either of those counts, has got to be established by evidence convincing you that there was a conspiracy beyond a reasonable doubt. Now, I don't know how I can be much more clear than that. All that I am saying is that the posture of the case is now such that if you, if you do find that there was a conspiracy, the Court believes there is sufficient evidence to support such a finding on your part. I'm not saying you should." Tr. pp. 332 et seq.

9. We know that the Fifth Circuit approval of the instruction given in United States v. Blue, 430 F.2d 1286 (5th Cir. 1970), was withdrawn in the case of United States v. Womack, 454 F.2d 1337 (5th Cir. 1972). The disavowal, however, was on policy grounds and the net effect of the decision in *Womack* is to affirm the conclusion in *Blue* that an instruction such as that given here is harmless. *See* United States v. Womack, *supra*, p. 1344, n. 2.

10. Allende's right to impeach, Silsbee should not be confused with the Government's right (barring 4th amendment considerations) to use evidence of the other piece of hashish to throw light upon the defendant Silsbee's intent and knowledge.

the defendants Allende and Montoya to testify deprived her of a fair trial.

The rule in this jurisdiction is stated as follows:

> . . . Recognizing the procedural problems inherent in a *per se* rule of severance, a defendant who has been denied the opportunity to comment on his co-defendant's silence must demonstrate probable prejudice in the presentation of his defenses to the trier of fact in order to claim a right to severance. . . . Unless a defendant can show that his defense probably would have benefited from commenting on a co-defendant's refusal to testify, denial of the motion to sever is not prejudicial. [Footnote omitted.] United States v. De La Cruz Bellinger, 422 F.2d 723, 727 (9th Cir. 1970), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970).

We find no prejudice here. It was the Government's theory supported by the defendant's own evidence that Silsbee participated with Allende and Montoya in the acts constituting the crime.

From Silsbee's own testimony it appears that about a week before the cabinet containing the drugs arrived she saw a telegram from India addressed to Allende stating that "Grandma is on the way"; that she knew that the code word "Grandma" referred to the cabinet; that she had a letter from TWA telling her that the crate was coming from New Delhi; that she and Allende planned to get the cabinet from the airport; that she went in a truck with Montoya to the airport and on the way met Allende driving her car; that Allende gave her money to give to Montoya; that the crate was consigned to her and that she did sign as the consignee of it; that she and Montoya took the crate in the truck to her apartment; that she helped uncrate the cabinet; that she knew the nature of opium and hashish; that she had been advised by Allende to identify the consignor of the crate, whose name appeared on the crate, as "MR. L. SILESBEE (sic), . . . New Delhi, India," as her father although her father was in California and to her knowledge there was no Mr. Silsbee in India. Silsbee's defense was that she did not know that the cabinet contained contraband and thought that the crate was shipped as a dry run to test the Oakland customs. She did have some suspicion that at a later time Allende might ship contraband.

The facts which so clearly pointed to Silsbee's guilty knowledge came from her testimony. This was not a case in which proof of Allende's or Montoya's guilt would establish Silsbee's innocence. Any arguments directed to the failure of Allende and Montoya to testify would have tended to convict them but we do not perceive how those arguments could have diminished the force of the facts establishing Silsbee's guilty knowledge.

Silsbee urges that there was creative activity on the part of the Government which led to her conviction on Count V of the indictment. Since identical concurrent sentences were imposed on Counts I through VI we do not examine the validity of Silsbee's contentions as to Count V. United States v. Newton, 442 F.2d 622 (9th Cir. 1971); United States v. Fishbein, 446 F.2d 1201 (9th Cir. 1971).

Montoya claims that the evidence was insufficient as to him. We have examined it and disagree.

The judgments of conviction are affirmed.

CHOY, Circuit Judge (concurring):

I fully concur in the foregoing opinion.

However, in view of several appeals in this court of late wherein the district courts involved unnecessarily generated problems by succumbing to the impulse to apprise their juries of the courts' opinion on the sufficiency of the evidence, I suggest great restraint if not abstinence in the use of jury instructions like those set forth in footnotes 7 and 8 of our opinion.