UNITED STATES *v.* EDWARDS ET AL.

No. 73–88.  Argued January 15, 1974—Decided March 26, 1974

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and REHNQUIST, JJ., joined.  STEW-

ART, J., filed a dissenting opinion, in which DOUGLAS, BRENNAN, and MARSHALL, JJ., joined, *post*, p. 809.

*Edward R. Korman* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Petersen*, and *Jerome M. Feit.*

*Thomas R. Smith,* by appointment of the Court, 414 U. S. 1125, argued the cause and filed a brief for respondents.*

MR. JUSTICE WHITE delivered the opinion of the Court.

The question here is whether the Fourth Amendment should be extended to exclude from evidence certain clothing taken from respondent Edwards while he was in custody at the city jail approximately 10 hours after his arrest.

Shortly after 11 p. m. on May 31, 1970, respondent Edwards was lawfully arrested on the streets of Lebanon, Ohio, and charged with attempting to break into that city's Post Office.[1] He was taken to the local jail and placed in a cell. Contemporaneously or shortly thereafter, investigation at the scene revealed that the attempted entry had been made through a wooden window which apparently had been pried up with a pry bar, leaving paint chips on the window sill and wire mesh

---

*Frank G. Carrington, Jr., Wayne W. Schmidt, Fred E. Inbau, Glen Murphy, Paul Keller,* and *Courtney A. Evans* filed a brief for Americans for Effective Law Enforcement, Inc., et al. as *amici curiae* urging reversal.

[1] Edwards (hereafter also referred to as respondent) had an alleged confederate, William T. Livesay, who was corespondent in this case, but died after the petition for certiorari was granted. We therefore vacate the judgment as to him and remand the case to the District Court with directions to dismiss the indictment. *Durham* v. *United States,* 401 U. S. 481 (1971).

screen. The next morning, trousers and a T-shirt were purchased for Edwards to substitute for the clothing which he had been wearing at the time of and since his arrest. His clothing was then taken from him and held as evidence. Examination of the clothing revealed paint chips matching the samples that had been taken from the window. This evidence and his clothing were received at trial over Edwards' objection that neither the clothing nor the results of its examination were admissible because the warrantless seizure of his clothing was invalid under the Fourth Amendment.

The Court of Appeals reversed. Expressly disagreeing with two other Courts of Appeals,[2] it held that although the arrest was lawful and probable cause existed to believe that paint chips would be discovered on respondent's clothing, the warrantless seizure of the clothing carried out "after the administrative process and the mechanics of the arrest have come to a halt" was nevertheless unconstitutional under the Fourth Amendment. 474 F. 2d 1206, 1211 (CA6 1973). We granted certiorari, 414 U. S. 818, and now conclude that the Fourth Amendment should not be extended to invalidate the search and seizure in the circumstances of this case.

The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrests, *United States* v. *Robinson,* 414 U. S. 218 (1973); *Chimel* v. *California,* 395 U. S. 752, 755 (1969); *Weeks* v. *United States,* 232 U. S. 383, 392 (1914), and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime

---

[2] The Court stated that it could not agree with *United States* v. *Williams,* 416 F. 2d 4 (CA5 1969), and *United States* v. *Caruso,* 358 F. 2d 184 (CA2), cert. denied, 385 U. S. 862 (1966).

when a person is taken into official custody and lawfully detained. *United States* v. *Robinson, supra.*[3]

It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. If need be, *Abel* v. *United States*, 362 U. S. 217 (1960), settled this question. There the defendant was arrested at his hotel, but the belongings taken with him to the place of detention were searched there. In sustaining the search, the Court noted that a valid search of the property could have been made at the place of arrest and perceived little difference

> "when the accused decides to take the property with him, for the search of it to occur instead at the first place of detention when the accused arrives there, especially as the search of property carried by an accused to the place of detention has additional justifications, similar to those which justify a search of the person of one who is arrested." *Id.,* at 239.

The courts of appeals have followed this same rule, holding that both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence.[4] Nor is there any doubt

---

[3] "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States* v. *Robinson, supra,* at 235.

[4] *United States* v. *Manar,* 454 F. 2d 342 (CA7 1971); *United States* v. *Gonzalez-Perez,* 426 F. 2d 1283 (CA5 1970); *United States* v.

that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial.[5]

Conceding all this, the Court of Appeals in this case nevertheless held that a warrant is required where the search occurs after the administrative mechanics of arrest have been completed and the prisoner is incarcerated. But even on these terms, it seems to us that the normal processes incident to arrest and custody had not been completed when Edwards was placed in his cell on the night of May 31. With or without probable cause, the authorities were entitled at that point not only to search Edwards' clothing but also to take it from him and keep it in official custody. There was testimony that this was the standard practice in this city.[6] The police

---

*DeLeo*, 422 F. 2d 487 (CA1 1970); *United States* v. *Williams, supra; United States* v. *Miles*, 413 F. 2d 34 (CA3 1969); *Ray* v. *United States*, 412 F. 2d 1052 (CA9 1969); *Westover* v. *United States*, 394 F. 2d 164 (CA9 1968); *United States* v. *Frankenberry*, 387 F. 2d 337 (CA2 1967); *Evalt* v. *United States*, 382 F. 2d 424 (CA9 1967); *Malone* v. *Crouse*, 380 F. 2d 741 (CA10 1967); *Cotton* v. *United States*, 371 F. 2d 385 (CA9 1967); *Miller* v. *Eklund*, 364 F. 2d 976 (CA9 1966); *Hancock* v. *Nelson*, 363 F. 2d 249 (CA1 1966); *Golliher* v. *United States*, 362 F. 2d 594 (CA8 1966); *Rodgers* v. *United States*, 362 F. 2d 358 (CA8), cert. denied, 385 U. S. 993 (1966); *United States* v. *Caruso, supra; Whalem* v. *United States*, 120 U. S. App. D. C. 331, 346 F. 2d 812, cert. denied, 382 U. S. 862 (1965); *Grillo* v. *United States*, 336 F. 2d 211 (CA1 1964), cert. denied *sub nom. Gorin* v. *United States*, 379 U. S. 971 (1965); *Robinson* v. *United States*, 109 U. S. App. D. C. 22, 283 F. 2d 508 (1960); *Baskerville* v. *United States*, 227 F. 2d 454 (CA10 1955).

[5] See, *e. g., United States* v. *Caruso, supra; United States* v. *Williams, supra; Golliher* v. *United States, supra; Whalem* v. *United States, supra; Robinson* v. *United States, supra; Evalt* v. *United States, supra; Hancock* v. *Nelson, supra.*

[6] App. 6. Historical evidence points to the established and routine custom of permitting a jailer to search the person who is

were also entitled to take from Edwards any evidence of the crime in his immediate possession, including his clothing. And the Court of Appeals acknowledged that contemporaneously with or shortly after the time Edwards went to his cell, the police had probable cause to believe that the articles of clothing he wore were themselves material evidence of the crime for which he had been arrested. 474 F. 2d, at 1210. But it was late at night; no substitute clothing was then available for Edwards to wear, and it would certainly have been unreasonable for the police to have stripped respondent of his clothing and left him exposed in his cell throughout the night. Cf. *United States* v. *Caruso*, 358 F. 2d 184, 185–186 (CA2), cert. denied, 385 U. S. 862 (1966). When the substitutes were purchased the next morning, the clothing he had been wearing at the time of arrest was taken from him and subjected to laboratory analysis. This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration.

being processed for confinement under his custody and control. See, *e. g.,* T. Gardner & V. Manian, Principles and Cases of the Law of Arrest, Search, and Seizure 200 (1974); E. Fisher, Search and Seizure 71 (1970). While "[a] rule of practice must not be allowed . . . to prevail over a constitutional right," *Gouled* v. *United States,* 255 U. S. 298, 313 (1921), little doubt has ever been expressed about the validity or reasonableness of such searches incident to incarceration. T. Taylor, Two Studies in Constitutional Interpretation 50 (1969).

Other closely related considerations sustain the examination of the clothing in this case. It must be remembered that on both May 31 and June 1 the police had lawful custody of Edwards and necessarily of the clothing he wore. When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered. *Chimel* v. *California,* 395 U. S. 752 (1969); *Frazier* v. *Cupp,* 394 U. S. 731 (1969); *Warden* v. *Hayden,* 387 U. S. 294 (1967); *Ker* v. *California,* 374 U. S. 23 (1963) (plurality opinion); *Zap* v. *United States,* 328 U. S. 624 (1946), vacated on other grounds, 330 U. S. 800 (1947). Surely, the clothes could have been brushed down and vacuumed while Edwards had them on in the cell, and it was similarly reasonable to take and examine them as the police did, particularly in view of the existence of probable cause linking the clothes to the crime. Indeed, it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest.

In *Cooper* v. *California,* 386 U. S. 58 (1967), an accused had been arrested for a narcotics offense and his automobile impounded preparatory to institution of forfeiture proceedings. The car was searched a week later without a warrant and evidence seized that was later introduced at the defendant's criminal trial. The warrantless search and seizure were sustained because they were "closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. . . . It would be unreasonable to hold that the police, having to retain the car in their

custody for such a length of time, had no right, even for their own protection, to search it." *Id.*, at 61–62. It was no answer to say that the police could have obtained a search warrant, for the Court held the test to be, not whether it was reasonable to procure a search warrant, but whether the search itself was reasonable, which it was. *Id.*, at 62. *United States* v. *Caruso, supra,* expresses similar views. There, defendant's clothes were not taken until six hours after his arrival at a place of detention. The Court of Appeals properly held that no warrant was required:

> "He and his clothes were constantly in custody from the moment of his arrest, and the inspection of his clothes and the holding of them for use in evidence were, under the circumstances, reasonable and proper." 358 F. 2d, at 185 (citations omitted).

*Caruso* is typical of most cases in the courts of appeals that have long since concluded that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.[7] The result is the

---

[7] See *Evalt* v. *United States,* 382 F. 2d 424 (CA9 1967); *Westover* v. *United States,* 394 F. 2d 164 (CA9 1968); *Baskerville* v. *United States,* 227 F. 2d 454 (CA10 1955). In *Baskerville,* the effects were taken for safekeeping on December 23 but re-examined and taken

same where the property is not physically taken from the defendant until sometime after his incarceration.[8]

In upholding this search and seizure, we do not conclude that the Warrant Clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee.[9] But we do think that the Court of Appeals for the First Circuit captured the essence of situations like this when it said in *United States* v. *DeLeo*, 422 F. 2d 487, 493 (1970) (footnote omitted):

"While the legal arrest of a person should not destroy the privacy of his premises, it does—for at

as evidence on January 6. *Brett* v. *United States*, 412 F. 2d 401 (CA5 1969), is *contra*. There the defendant's clothes were taken from him shortly after arrival at the jail, as was the custom, and held in the property room of the jail. Three days later the clothing was searched and incriminating evidence found. A divided panel of the Court of Appeals held the evidence inadmissible for want of a warrant authorizing the search.

[8] *Hancock* v. *Nelson*, 363 F. 2d 249 (CA1 1966); *Malone* v. *Crouse*, 380 F. 2d 741 (CA10 1967); *United States* v. *Caruso*, 358 F. 2d 184 (CA2 1966). In *Hancock*, the defendant was first taken into custody at 12:51 a. m. His clothes were taken at 2 p. m. on the same day, two hours after probable cause to do so eventuated.

[9] Holding the Warrant Clause inapplicable in the circumstances present here does not leave law enforcement officials subject to no restraints. This type of police conduct "must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Terry* v. *Ohio*, 392 U. S. 1, 20 (1968). But the Court of Appeals here conceded that probable cause existed for the search and seizure of respondent's clothing, and respondent complains only that a warrant should have been secured. We thus have no occasion to express a view concerning those circumstances surrounding custodial searches incident to incarceration which might "violate the dictates of reason either because of their number or their manner of perpetration." *Charles* v. *United States*, 278 F. 2d 386, 389 (CA9), cert. denied, 364 U. S. 831 (1960). Cf. *Schmerber* v. *California*, 384 U. S. 757 (1966); *Rochin* v. *California*, 342 U. S. 165 (1952).

least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence."

The judgment of the Court of Appeals is reversed.

*So ordered.*

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE MARSHALL join, dissenting.

The Court says that the question before us "is whether the Fourth Amendment should be extended" to prohibit the warrantless seizure of Edwards' clothing. I think, on the contrary, that the real question in this case is whether the Fourth Amendment is to be ignored. For in my view the judgment of the Court of Appeals can be reversed only by disregarding established Fourth Amendment principles firmly embodied in many previous decisions of this Court.

As the Court has repeatedly emphasized in the past, "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Coolidge* v. *New Hampshire,* 403 U. S. 443, 454–455; *Katz* v. *United States,* 389 U. S. 347, 357. Since it is conceded here that the seizure of Edwards' clothing was not made pursuant to a warrant, the question becomes whether the Government has met its burden of showing that the circumstances of this seizure brought it within one of the "jealously and carefully drawn"[1] exceptions to the warrant requirement.

[1] *Jones* v. *United States,* 357 U. S. 493, 499.

The Court finds a warrant unnecessary in this case because of the custodial arrest of the respondent. It is, of course, well settled that the Fourth Amendment permits a warrantless search or seizure incident to a constitutionally valid custodial arrest. *United States* v. *Robinson,* 414 U. S. 218; *Chimel* v. *California,* 395 U. S. 752. But the mere fact of an arrest does not allow the police to engage in warrantless searches of unlimited geographic or temporal scope. Rather, the search must be spatially limited to the person of the arrestee and the area within his reach, *Chimel* v. *California, supra,* and must, as to time, be "substantially contemporaneous with the arrest," *Stoner* v. *California,* 376 U. S. 483, 486; *Preston* v. *United States,* 376 U. S. 364, 367–368.

Under the facts of this case, I am unable to agree with the Court's holding that the search was "incident" to Edwards' custodial arrest. The search here occurred fully 10 hours after he was arrested, at a time when the administrative processing and mechanics of arrest had long since come to an end. His clothes were not seized as part of an "inventory" of a prisoner's effects, nor were they taken pursuant to a routine exchange of civilian clothes for jail garb.[2] And the considerations that typically justify a warrantless search incident to a lawful arrest were wholly absent here. As Mr. Justice

---

[2] The Government conceded at oral argument that the seizure of the respondent's clothing was not a matter of routine jail procedure, but was undertaken solely for the purpose of searching for the incriminating paint chips.

No contention is made that the warrantless seizure of the clothes was necessitated by the exigencies of maintaining discipline or security within the jail system. There is thus no occasion to consider the legitimacy of warrantless searches or seizures in a penal institution based upon that quite different rationale.

Black stated for a unanimous Court in *Preston* v. *United States, supra,* at 367:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." [3]

Accordingly, I see no justification for dispensing with the warrant requirement here. The police had ample time to seek a warrant, and no exigent circumstances were present to excuse their failure to do so. Unless the exceptions to the warrant requirement are to be "enthroned into the rule," *United States* v. *Rabinowitz,* 339 U. S. 56, 80 (Frankfurter, J., dissenting), this is precisely the sort of situation where the Fourth Amendment requires a magistrate's prior approval for a search.

The Court says that the relevant question is "not whether it was reasonable to procure a search warrant, but whether the search itself was reasonable." *Ante,* at 807. Precisely such a view, however, was explicitly rejected in *Chimel* v. *California, supra,* at 764–765, where the Court characterized the argument as "founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests." As

---

[3] No claim is made that the police feared that Edwards either possessed a weapon or was planning to destroy the paint chips on his clothing. Indeed, the Government has not even suggested that he was aware of the presence of the paint chips on his clothing.

they were in *Chimel,* the words of Mr. Justice Frankfurter are again most relevant here:

"To say that the search must be reasonable is to require some criterion of reason. It is no guide at all either for a jury or for district judges or the police to say that an 'unreasonable search' is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response. There must be a warrant to permit search, barring only inherent limitations upon that requirement when there is a good excuse for not getting a search warrant . . . ." *United States* v. *Rabinowitz, supra,* at 83 (dissenting opinion).

The intrusion here was hardly a shocking one, and it cannot be said that the police acted in bad faith. The Fourth Amendment, however, was not designed to apply only to situations where the intrusion is massive and the violation of privacy shockingly flagrant. Rather, as the Court's classic admonition in *Boyd* v. *United States,* 116 U. S. 616, 635, put the matter:

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right,

as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

Because I believe that the Court today unjustifiably departs from well-settled constitutional principles, I respectfully dissent.