**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony ROWELL, Defendant-Appellant.***

**No. 79–1486.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1980.

Decided Feb. 22, 1980.

James R. Vogler, Winston & Strawn, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., William A. Spence, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before TONE, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant, Anthony Schmoll [1] was indicted on twenty-eight counts of interstate transportation of altered securities in violation of 18 U.S.C. § 2314 (1976). After a bench trial, he was convicted on eleven of those counts.[2] Defendant appeals his conviction claiming that fingerprint evidence attributable to his arrest by state officials on a related charge should have been suppressed because the arrest was effected without probable cause; that under the circumstances of this case the failure of the federal government to indict the defendant until twenty-nine months after the state arrest deprived him of his right to a speedy trial; and that the evidence was insufficient to convict. We affirm.

Defendant first claims his arrest on July 29, 1976 by the Waukegan Police Department was effected without probable cause. He thus asserts, relying on *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), that the fingerprints resulting from this arrest, which were compared to fingerprints on various altered money orders and were testified to at trial to connect him with those money orders, must be suppressed as the fruits of an illegal arrest.

The district court held a hearing on the motion to suppress this fingerprint comparison and found that probable cause existed for the arrest. Our review of the record convinces us that the district court properly concluded that there was probable cause.

---

1. The defendant was indicted and was tried under the name of Anthony Rowell, which is an alias the defendant has used. His name appears to be Schmoll, however, and that is how we will refer to him.

2. The court sentenced him to time served on Count I and five years probation on the other ten counts. The court dismissed one other count early in the trial and found defendant not guilty on the remaining counts.

The record, when viewed in the light most favorable to the government, reveals that Bruce Pecarro, second vice president and the security officer at the Citizens National Bank, received a phone call from an unidentified employee of the American Express Company. The American Express employee informed Pecarro that money orders used to open and to make subsequent deposits to the account of Videcon International at the Citizens National Bank had been deceptively forged and raised. American Express refused, sent back or challenged the forged money orders. Pecarro examined his records of the Videcon account and discovered that one of the signatories of the account was a man named Schmoll. Pecarro called the Waukegan Police Department and, when a police captain met Pecarro at the bank, related this information to the police. The captain and Pecarro also examined Xerox copies of the money orders. The police captain was also informed that Schmoll, the one who opened the account, was a neatly attired black man with a Jamaican accent. Two days later, Pecarro called the police department and indicated that the person who opened the Videcon account and deposited checks in that account was in the bank. The captain sent two officers to the bank. The officers later arrested Schmoll and fingerprinted him.

The police did not directly observe the information on which the arrest was based, so this information must satisfy the two-part test for determining probable cause announced in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The defendant claims that since there was no testimony concerning the credibility of the American Express informant or the grounds on which the American Express informant relied to conclude that the money orders had been forged, the two-part test of *Aguilar* was not satisfied.

In *Aguilar*, the Supreme Court addressed the issue of what is sufficient to constitute probable cause for an arrest[3] where the knowledge of the police is based on information supplied by an informant. The Court stated that in such situations probable cause may be based solely on the tip of an informant if there are adequate indications that the informant is reliable or credible and the basis for the informant's conclusion is known. *Id.* at 114–15, 84 S.Ct. at 1514. Here we feel that the information supplied by the informant satisfied the *Aguilar* test and there were reasonable grounds for the arrest. The informant in this case was an unnamed employee of American Express. The informant related that certain American Express money orders had been forged and thus would not be honored. Pecarro, the bank officer, knew that American Express had refused to honor the money orders. Two hypotheses can explain the advent of the information supplied by the American Express employee. First, such a conclusion concerning alterations could be based on an examination of the money orders conducted by American Express in the normal course of its business to help ensure against forgeries. If such a hypothesis is true the two-prong *Aguilar* test is satisfied. The second hypothesis is that the American Express employee reported that the money orders were forged in order to implicate the defendant in a criminal scheme. Judge Marshall must have concluded that the first hypothesis was substantially more believable than the second absent any reason to the contrary[4]

---

3. Here the state police arrested defendant in a public place without an arrest warrant. In such a situation, an arrest is legal if there are reasonable grounds to believe that a crime has been or is being committed. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). While the Supreme Court has said this reasonableness requirement is surely not less stringent than a finding of probable cause required when there is a warrant, *Wong Sun v.*

*United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963), the standards are sufficiently analogous to be used interchangeably in this case.

4. The American Express employee in this case is unlike the informants on which police often rely. Generally, police informants are not "the most reliable members of the community and are often engaged in some criminal activity

and found accordingly. American Express, with a business reputation at stake, is much more likely to have acted after an examination of the money orders. Hence, Judge Marshall's conclusion concerning the reliability of the American Express employee is not clearly erroneous, *United States v. Conner*, 478 F.2d 1320, 1323 (7th Cir. 1973), and the *Aguilar* test was satisfied. Economic incentives help ensure the reliability of the American Express employee and the business reputation of American Express makes it most reasonable to assume the conclusion that the money orders were forged was reached after an examination of the money orders. Additional evidence connected defendant with the money orders. Thus, probable cause existed because the facts and reasonably trustworthy information known to the police were sufficient " 'to warrant a man of reasonable caution in the belief that' an offense [had] been . . . committed." *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)).[5]

█ In addition, even if the arrest had been illegal we do not think *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 precluded the introduction of the fingerprint comparison at the trial. The defendant does not contest the fact that the federal government, prior to trial, could legitimately have required the defendant to give his fingerprints.[6] The allegedly illegal state arrest was thus not a "but for" cause of the introduction of the fingerprint comparison, and therefore the fingerprint comparison was properly admitted. *United States v. Jarvis*, 560 F.2d 494, 498 (2d Cir. 1977), cert. denied, 435 U.S. 934, 98 S.Ct. 1511, 55 L.Ed.2d 532 (1978). Under such circumstances it would be useless to require the government to retake the defendant's fingerprints. *Cf. Stevenson v. Mathews*, 529 F.2d 61, 63 (7th Cir.) (per curiam), cert. denied, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976).

The situation in *Davis v. Mississippi* was very different. There, the police, investigating a crime committed by an individual described only as a black youth, took at least twenty-four black youths to police headquarters where they were fingerprinted. The defendant was one such youth. His fingerprints matched those on a window at the scene of the crime. He was tried and convicted. The Supreme Court held the fingerprints inadmissible reasoning that the deterrent purpose underlying the exclusionary rule precluded admission of the fingerprints. In contrast, here the government independently linked the defendant to the crime and easily could have obtained another clear set of defendant's fingerprints and compared them to the fingerprints on the altered money orders at trial. If any error resulted from the use of the fingerprints resulting from the Wauke-

themselves." W. LaFave, *Arrest: The Decision to Take a Suspect into Custody* at 268 (1965). In such cases there is a particular need for concern about the informant's reliability. Here, the informant was an employee of American Express acting in the course of his business. Such an informant is not so inherently unreliable. *Cf.* Fed.R.Evid. 803(6).

5. Probable cause is based on only a "probability and not a prima facie showing of criminal activity . . . ." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Hence, defendant's contention—because the police conducted further investigation after the arrest the arrest was without probable cause—is meritless.

Defendant also argues that because the police captain testified that after his first meeting with Pecarro he did not think there were suffi-

cient facts to obtain a warrant probable cause did not exist. An independent judicial officer is the best judge of the existence of probable cause, however. *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). As Judge Marshall put it: "Just as the police officer is not the judge of [the] sufficiency [of the facts to establish probable cause], he should not be the judge of insufficiency." Here, there was probable cause.

6. In fact, defendant, in arguing that the government should have been required to proceed with prosecution at the time of the Waukegan arrest because they had all the evidence which was later found sufficient to convict, apparently concedes that the federal government would have had enough evidence to arrest and fingerprint defendant over two years before his trial.

gan arrest, it was harmless.[7]  *See United States v. Jarvis*, 560 F.2d at 499.

■ The defendant next claims that he was deprived of his constitutional right to a speedy trial. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), makes clear that the Sixth Amendment speedy trial provision only has application when the "defendant in some way becomes an 'accused'. . . ." *Id.* at 313, 92 S.Ct. at 459. The Court in *Marion* stated further that it is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision . . . ." *Id.* at 320, 92 S.Ct. at 463. Here, the federal government did not formally indict the defendant until November 1978 and his trial was only two months later. There is no claim that this two month period should give rise to a postaccusation speedy trial claim.

The defendant argues, however, that the running of the speedy trial claim should date from July 1976, twenty-nine months before the trial, when he was arrested by state police. He contends that the federal government was so involved in his state arrest—as evidenced by its questioning of the defendant at that time, by the issuance of a federal grand jury subpoena soon after the state arrest, and by keeping abreast of the state proceedings—that the Waukegan arrest must constitute a constructive federal arrest of defendant for the purposes of the speedy trial clause. Thus, defendant argues he need not show he was prejudiced by the delay to prevail on this claim.

The record reveals, however, and Judge Marshall found, that the federal and state governments were conducting independent investigations based, in large part, on unrelated incidents. As we said in *United States v. De Tienne*, 468 F.2d 151, 155 (7th Cir. 1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973), "[i]t would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses." Here the facts indicate merely cooperation between state and federal investigators concerning separate incidents involving forged securities and this is insufficient to charge the state arrest to the federal government.[8]

■ Defendant next claims that because he has shown actual prejudice caused by the twenty-nine month delay in his prosecution, he has established a deprivation of his right to speedy prosecution embodied in the due process clause of the Fifth Amendment. The Supreme Court has made it clear that proof of prejudice is "generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). *See also United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. King*, 593 F.2d 269 (7th Cir. 1979).

On the record before us, we feel Judge Marshall correctly concluded that the defendant had not established a due process claim. There is no evidence that the defendant's defense to the federal claim was

---

7.  *Bynum v. United States*, 104 U.S.App.D.C. 368, 262 F.2d 465 (D.C.Cir.1958), is distinguishable. In *Bynum*, probable cause was missing before the arrest and the fingerprints would not have been obtained "but for" the illegal arrest. *See Jarvis*, 560 F.2d at 499 n.7.

8.  Defendant's reliance on *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), is misplaced. In *Smith*, Texas had indicted the defendant but did not try him for six years

claiming that since the defendant was incarcerated in the federal penitentiary during those years the speedy trial provision did not apply. The Supreme Court disagreed with Texas' contention and held that incarceration in another jurisdiction did not toll the speedy trial clause. Here, in contrast, there was no federal accusation until only two months prior to the trial so the speedy trial clause did not begin to run until the federal indictment.

prejudiced by the delay in the prosecution. The defendant has only claimed that the delay caused harm to his personal life. In addition, as Judge Marshall found, the defendant was primarily responsible for the delay in his federal prosecution because he continually refused to give handwriting exemplars to a federal grand jury. The government initially thought that the prosecution should not proceed without the exemplars and only on later reflection did the government conclude it would proceed without the exemplars. Further, there is no indication that the defendant requested that the government proceed with his prosecution. Under these circumstances, there is no deprivation of defendant's due process rights.

■ The final argument advanced by the defendant is that the evidence was insufficient for a conviction on the issue of the alteration of money orders. The government contended that the money orders were mechanically altered to increase the dollar amounts. The FBI crime laboratory could not establish that the money orders had been altered. Instead, the government relied on a comparison of the various money orders and the corresponding receipts to establish alteration. An American Express inspector testified that, from an examination of the orders, it was more likely that the money orders had been altered than the receipts. The defendant contends, however, that government evidence did not foreclose the possibility that the divergence between receipts and money orders was due to alteration of the receipts, and thus the government did not establish that the defendant altered the money orders beyond a reasonable doubt. The government argued that the possibility that all the receipts, which were purchased in a wide variety of stores, had been altered and the money orders, which could be connected to one individual, had not been, was such an unlikely possibility that the proof was sufficient on the element of the forgery.

■ The government need not foreclose every conceivable hypothesis of the defendant's innocence; it need only offer evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974); *United States v. Cardi*, 478 F.2d 1362, 1368 (7th Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237 (1973). In this case, with some 100 different money orders from a variety of stores all of which were deposited in one of the defendant's bank accounts, the altered receipt theory appears most unlikely. For the altered receipt theory to be true several store clerks would have had to have altered the receipts on several money orders all of which, coincidentally, ended up in an account of defendant. The mere suggestion that this could explain the divergence between the amounts on the receipts and the amounts on the money orders is not enough to raise a reasonable doubt as a matter of law.

Accordingly, the conviction is affirmed. AFFIRMED.