**UNITED STATES of America, Plaintiff,**

v.

**Cynthia KING, Defendant.**

**No. 84 CR 744-7.**

United States District Court,
N.D. Illinois, E.D.

Jan. 28, 1985.

Dan K. Webb, U.S. Atty. by James L. Sanders, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Philip Krasny, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The defendant, Cynthia King, is charged with conspiracy to steal money from several federally insured financial institutions in violation of 18 U.S.C. § 371; theft of money from federally insured financial institutions in violation of 18 U.S.C. § 2113(b); and interstate transportation of false securities in violation of 18 U.S.C. § 2314. The government charges that King was part of a check-kiting scheme in which several defendants, including King, opened bank accounts with a small amount of cash, made subsequent deposits with bad checks, and later attempted to withdraw cash against the deposited bad checks.

Before the Court is defendant King's motion to quash arrest and suppress evidence and motion to suppress confession. The Court, having heard testimony on January 4, 1985, and having considered exhibits and memoranda submitted by the parties, does hereby enter the following findings pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure.

### I. *Facts*

Detective Thomas Fries testified that he has been employed by the Schaumburg Police Department for ten years. Fries has been employed as a detective for the last eight years, and in 1981, Fries was responsible for the investigation of financial crimes. Prior to February 17, 1981, Fries had conducted investigations of check-kiting activities, and was aware that one of the methods used to kite checks was to open a bank account with a small cash deposit, make a later larger deposit with a bad check drawn on another bank, and then to attempt to withdraw cash against the check before bank officials discovered the check to be no good.

On February 17, 1981, at approximately 5:00 P.M., Fries received a telephone call from Jerry Gartner, an employee of the Schaumburg office of the Damen Savings and Loan Association ("Savings and Loan"). During that telephone conversation, Gartner told Fries that: (1) a woman named Cynthia King had opened an account at the Savings and Loan on February 6, 1981 with a $20 cash deposit; (2) after the account was opened, a $6,800 check drawn on a bank in Cleveland, Ohio was deposited into the account; (3) the $6,800 check was a starter check from the Ohio bank and was dated February 9, 1981; (4) the $6,800 check was not honored by the Cleveland bank; (5) Gartner had recently received information from the Cleveland bank that the bank account was opened with fictitious identification; and (6) Cynthia King was presently at the Savings and Loan picking up printed checks for her account. Gartner also provided a physical description of King to Fries during their conversation.

Based upon the information received from Gartner, Fries immediately radioed his partner, Detective Poss, and instructed Poss to meet him at the Savings and Loan. Within ten minutes, Fries and Poss arrived at the Savings and Loan. Upon their arrival, Fries observed a woman matching the description of King in the Savings and Loan parking lot. Fries approached the woman and asked her name. The woman identified herself as Cynthia King. Fries then asked King to wait with Detective Poss while Fries went into the Savings and Loan.[1]

Fries entered the Savings and Loan and spoke briefly with Jerry Gartner, who confirmed the information he had previously given Fries on the telephone. During their face-to-face meeting, Gartner also told Fries that: (1) a teller had identified King as the same individual who had opened the account at the Savings and Loan on February 6, 1981; (2) the $6,800 check was deposited at Damen's Chicago branch on February 10, 1981; and (3) on February 13, 1981, King had attempted to cash a check for $400 at the Savings and Loan, but was

---

**1.** King testified that when she was first approached by Fries, Fries seized her purse and ordered her to wait in the police car while Fries entered the bank. On this point, the Court finds the testimony of Fries credible and the testimony of King not credible.

refused because her account contained uncollected funds. Fries was inside the Savings and Loan for about 45 minutes to an hour.

Following his conversation with Gartner, Fries returned to the parking lot and informed King that she was under arrest. King was not advised of her *Miranda* rights at any time following her arrest. King was then transported to the Schaumburg Police Department where she was locked up. An individual named Webster Nolen who was with King at the bank was also arrested. As a part of the Schaumburg Police Department's normal procedures, King's purse was taken from her and inventoried. A number of records relating to other bank accounts were found during this inventory search.

## II. *Discussion*

Defendant seeks an order quashing the arrest and suppression of all evidence obtained as a result of the arrest. Defendant argues that Detective Fries lacked probable cause to arrest King at the Savings and Loan based upon information known to Fries at the time of the arrest. Additionally, defendant seeks suppression of all statements made by King after her arrest due to the failure of anyone at the Schaumburg Police Department to inform King of her *Miranda* rights.

### A. *Motion to Quash Arrest*

The first question that must be resolved is the exact point in time at which King was arrested. King argues that she was arrested when Fries first approached her in the bank parking lot. King testified that Detective Fries immediately told her to "get into the [police] car" with Detective Poss while Fries entered the bank. King estimates she was detained in the Savings and Loan parking lot for about 45 minutes to an hour while Fries was in the Savings and Loan. Detective Fries admitted that he considered King "not free to leave" after their initial encounter.

The government argues that, at the very least, Fries possessed a "reasonable suspicion" that King was involved in criminal activity at the time of their initial encoun-

ter in the parking lot, thus justifying a *Terry* investigatory stop of King. A *Terry* investigatory stop, however, is limited to a "brief, nonintrusive detention during a frisk for weapons or preliminary questioning." *United States v. Black*, 675 F.2d 129, 133 (7th Cir.1982). The government has not supplied, nor has the Court discovered, any authority which would allow an individual subject to a *Terry* investigatory stop for "45 minutes to an hour" while the police officer continues his investigation elsewhere. For purposes of the fourth amendment, therefore, King was "seized" upon Fries' initial encounter with her in the parking lot and the arrest is valid only if Fries possessed probable cause at the time of that arrest.

The Seventh Circuit has recently summarized the standards for probable cause. In *United States v. Covelli*, 738 F.2d 847 (7th Cir.1984), the Court stated:

'The police have probable cause to arrest an individual where 'the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense. [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' The determination of whether probable cause exists in a given situation involves 'the factual, practical considerations of everyday life upon which reasonable, prudent [persons], not legal technicians act.'

*Id.* at 853 (citations omitted). The burden of establishing probable cause rests with the government. *United States v. Allen*, 629 F.2d 51, 55 (D.C.Cir.1980).

There is not any evidence in the record to suggest that the information supplied to Detective Fries was not "reasonably trustworthy." Information supplied to police by bank personnel uncovered in the normal course of their business is generally considered reliable. *See United States v. Rowell*, 612 F.2d 1176, 1178–79 (7th Cir.1980).

786

In this case, the information supplied to Detective Fries came essentially from two sources. Jerry Gartner, an employee of the Savings and Loan, related to Fries that King had recently opened a checking account with a small cash deposit and that a starter check in the amount of $6,800 deposited into King's account had been not honored. Additionally, Gartner informed Fries that an employee of the Cleveland bank which refused to honor the $6,800 check had informed Fries that the Cleveland account had been opened with fictitious identification. It is clear that the information supplied by the Savings and Loan and the Cleveland bank was "reasonably trustworthy information." *See United States v. Rowell, supra,* 612 F.2d at 1178–79.

■ The issue then becomes whether the reasonably trustworthy information supplied to Fries was "sufficient 'to warrant a man of reasonable caution in the belief that an offense [had] been … committed.'" *United States v. Rowell, supra,* 612 F.2d at 1179 (*quoting Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). This standard, however, is not entirely objective. One factor that may be considered by the Court is the past experience of the arresting officer with similar investigations. *United States v. Green,* 670 F.2d 1148, 1153 (D.C.Cir. 1981). Unusual banking transactions, although appearing legal on the surface, may cause a police officer with prior experience in financial crimes to reasonably believe an offense has been committed even where the average person would not have reason to question the apparently legal transactions. *See United States v. Frazier,* 545 F.2d 71, 72–73 (8th Cir.1976). *See also United States v. Green, supra,* 670 F.2d at 1153.

■ In this case, Detective Fries was experienced in investigating financial

crimes. Furthermore, Fries had conducted investigations of check-kiting activities that involved opening a checking account with a small cash deposit, making a later larger deposit with a bad check drawn on another bank, and then attempting to withdraw cash against the bad check before bank officials became suspicious. Based upon the information related to Fries by Gartner during their telephone conversation, the Court is convinced that Fries possessed probable cause to arrest King upon arriving at the bank. King's checking account transactions closely paralleled prior check-kiting schemes which Fries had investigated. Before King's arrest, Fries had been informed that a $6,800 starter check drawn on an account opened with fictitious identification had been deposited into a checking account recently opened with a small cash deposit. Fries also was informed that King had opened the account and was presently at the Savings and Loan attempting to pick up printed checks for her account. Given Fries past experience in check-kiting schemes, he reasonably believed that an offense had been committed.

Having concluded that Fries possessed probable cause to arrest King at the Savings and Loan parking lot on February 17, 1981, the subsequent inventory search of King's purse was proper. *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). In fact, King does not challenge the inventory search of the purse.[2] For all of the above reasons, defendant's motion to quash the February 17, 1981 arrest and to suppress evidence derived from that arrest is denied.

B. *Motion to Suppress Confession*

In light of the Schaumburg Police Department's failure to inform King of her *Miranda* rights, the government does not oppose defendant's motion to suppress her post-arrest statements. That motion therefore is granted.

---

**2.** King testified that Fries seized her purse at their initial encounter. As noted earlier, the Court finds this testimony not credible. Even assuming, however, that Fries seized the purse upon his initial contact with King, the seizure

would have been a proper search incident to a lawful arrest. *See United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

### III. *Conclusion*

Defendant's motion to quash the February 17, 1981 arrest and to suppress evidence is denied. Defendant's motion to suppress confession is granted.

IT IS SO ORDERED.