UNITED STATES of America, Plaintiff,

v.

$639,558, Defendant.

Civ. A. No. 89–2430.

United States District Court,
District of Columbia.

Nov. 20, 1990.

Jock Banks, U.S. Attorney's Office, Washington, D.C., for plaintiff.

Donald F. Samuel, Garland & Samuel, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This is an *in rem* civil action in which the United States is seeking forfeiture of currency in the amount of $639,558 seized from Christopher Todd Bleichfeld, who has filed a claim for return of the currency. The government contends that forfeiture is justified due to Mr. Bleichfeld's involvement in drug law and money laundering violations. Claimant has petitioned this Court to suppress the cash and all other evidence seized by the government on the grounds that the search and seizure of claimant's luggage violated the Fourth Amendment.

## BACKGROUND

On August 11, 1988, Captain Suave, Detective Vance Beard, and Captain Robert Moss, agents of the Interdiction Group, Narcotics Branch, D.C. Metropolitan Police Department boarded an Amtrak train at Union Station in Washington, D.C. with a fully trained drug detector dog.[1] The officers were investigating Mr. Bleichfeld because his travel pattern conformed to many of the factors in the drug courier profile. Mr. Bleichfeld was traveling from Fort Lauderdale to New York City by train on a ticket which had been purchased in cash; in addition, Mr. Bleichfeld changed his accommodations several times during his trip.[2]

The officers walked the dog past Mr. Bleichfeld's compartment on the train, but the dog failed to show more than a passing interest. The officers then spotted Mr. Bleichfeld entering his compartment. They knocked on the door and identified themselves as law enforcement officers searching for drugs. The officers requested Mr. Bleichfeld's consent to search his compartment. He did not give his consent, but he did agree to a dog sniff of his luggage, which he placed in the aisle of the train outside the compartment. The dog gave a positive alert, and as a result of that fact along with his response to the police officers' questions, the background of his ticket purchase, and his activities on the train, Mr. Bleichfeld was placed under arrest.

Before leaving the train, the officers handcuffed Mr. Bleichfeld and collected all his luggage, which consisted of three pieces, a briefcase, a small suitcase, and a large suitcase weighing about 80 pounds. Mr. Bleichfeld and his luggage were removed from the train and taken from the platform to the Sergeant's office in Union Station. The luggage was not opened.

At this point, Mr. Bleichfeld had been under arrest and in handcuffs for a substantial period of time. The officers' original intent had been to obtain a search warrant in order to open Mr. Bleichfeld's luggage at the Sergeant's office. Detective Vance Beard was uncertain, however, whether a search warrant was actually required and decided to phone Assistant United States Attorney Robert Andary, who was one of the United States Attorney's Offices foremost experts on search warrant issues. Detective Beard's judgment cannot be faulted.

After speaking with Detective Beard about the situation, AUSA Andary concluded that the luggage could be searched without a warrant as a search incident to arrest. Following this advice, the officers proceeded to open and search Mr. Bleichfeld's luggage. No drugs were found. Instead, the agents found currency in the amount of $635,000 along with eight safety deposit keys, and ledgers detailing Mr. Bleichfeld's various expenses.

---

1. The Court assumes that the dog is fully qualified to detect narcotics as no questions concerning his reliability have been raised.

2. This Court heard testimony that another basis for the officers' investigation of Mr. Bleichfeld was that his ticket was a one-way ticket and that the reservation was made shortly before the train's departure. In fact, the reservation form showed that Mr. Bleichfeld's ticket was round trip and that he made his reservation two days in advance.

The government contends that the money was the proceeds of a narcotics transaction. Cocaine residue was found on the currency, and there is evidence that the defendant had connections with a money laundering bank in Bermuda. Alleging that there is probable cause to believe that Mr. Bleichfeld was engaged in violating drug and money laundering laws, the government seeks forfeiture of the currency. 21 U.S.C. § 881(a)(6) specifically provides for the forfeiture of money furnished or intended to be furnished in exchange for a controlled substance, while 18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of money involved in a money laundering transaction.

█ Mr. Bleichfeld contends that the search of his luggage by the police officers violated the Fourth Amendment because it was not authorized by a warrant and was not incident to arrest, as the search took place at a time and location distant from his arrest. Mr. Bleichfeld asks this Court to suppress the currency and related evidence.

The rule of suppression applies to forfeiture actions. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *United States v. $124,570,* 873 F.2d 1240 (9th Cir.1989); *One 1960 Oldsmobile Convertible Coupe v. United States,* 371 F.2d 958 (D.C.Cir. 1966). A motion to suppress is the proper vehicle to test the legality of the search and seizure in a civil forfeiture case. *Id.*

## DISCUSSION

The search incident to arrest exception to the Fourth Amendment's warrant requirement is articulated by the Supreme Court in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This doctrine permits warrantless searches of an arrestee's person and the area within his immediate control:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.... There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control."

*Id.* at 762–63, 89 S.Ct. at 2039–40. The *Chimel* doctrine has been developed so as to allow an officer to search an arrestee and the area within his grasp without requiring the officer to affirmatively demonstrate the likelihood that a weapon or contraband would in fact be found. This doctrine is restricted, however, where the search occurs at a time and place remote from the arrest, as it did in the case before this Court.[3]

Faced with a fact pattern quite similar to the one in this case, the Supreme Court reviewed its search incident to arrest exception. In *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), defendants were arrested at a train station in possession of a 200–pound footlocker which they had placed in the trunk of their car after leaving the train. A warrantless search was conducted an hour later, at the police station, after the defendants were incarcerated. The Supreme Court ruled that this search was not justified as a search incident to arrest. The Court noted that there was no exigent circumstance which would have permitted a search, since the federal agents were in exclusive control of the footlocker and the

**3.** The government has proffered a series of cases which stem from *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* and its progeny have expanded the search incident to arrest exception in the context of automobiles. However, the Supreme Court has indicated that its holding was in essence limited to automobiles and that it in no way intended to alter the fundamental principles of search incident to arrest articulated in *Chimel. Id.* 101 S.Ct. at 2864, n. 3. No automobile exception applies in the instant case, and therefore the authority cited by the government in this regard is inapposite.

defendants were securely in custody, and there was no suspicion that the contents of the locker posed a danger to the officers. The Court concluded:

[W]arrantless searches of luggage or property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.* 97 S.Ct. at 2485 (citations omitted). It is thus clear that where the search takes place at a location other than where the arrest was made, or when a substantial amount of time has passed between the arrest and the search, *and* there is no exigent circumstance justifying the search, a warrantless search cannot be justified under the search incident to arrest exception.

The requirement that the search take place contemporaneously with arrest is less stringent when applied to personal effects of the arrestee which are within the arrestee's control or grasp. A search of clothing on the arrestee's body which did not take place until the arrestee had spent the night in jail was upheld in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). Although the Supreme Court in *Chadwick* did not specifically refer to *Edwards*, it did note that the rule for luggage and other closed containers was different from that for articles immediately associated with the person. *Chadwick*, 97 S.Ct. at 2485.

In those cases where the courts have upheld a search incident to arrest not immediately contemporaneous with the ar-

rest, the delay has been insubstantial, *see United States v. Fleming*, 677 F.2d 602, 606 (7th Cir.1982) (delay of only five minutes between arrest and search); *United States v. Garcia*, 605 F.2d 349, 354 (7th Cir.1979) (delay of less than fifteen seconds between arrest and search) or the item seized was not within the exclusive control of the police either because the defendant was not handcuffed and could still reach the property, *see United States v. Porter*, 738 F.2d 622, 624 (4th Cir.1984), or because other people in the vicinity had access to the property, *see Garcia*, 605 F.2d at 354, 356.

In the case before the Court, none of these factors is present so as to render *Chadwick* inapplicable. Where none of the exceptions noted above apply and there are no exigent circumstances, *Chadwick* is clearly recognized as controlling authority. Thus, in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979), the Supreme Court held a search unlawful where the arrestee's suitcase had been secured by the police and there was no danger of loss of evidence or risk to the police. Similarly, in *United States v. Lartey*, 716 F.2d 955 (2d Cir.1983), the court ruled that a search of a briefcase at DEA headquarters, after DEA agents had handcuffed the defendant and transported him and his briefcase from the place of arrest to headquarters, could not be deemed a search incident to arrest.

In this case, Mr. Bleichfeld was placed under arrest just outside his train compartment. He was handcuffed, and he and his luggage were removed from the train and ultimately taken to the Sergeant's office at the train station. A good deal of time passed between Mr. Bleichfeld's arrest and the time the suitcases were finally opened.[4] Moreover, the search did not take place on the train where Mr. Bleichfeld was arrested or even on the platform; it took place in the Sergeant's office. At the time of the

---

**4.** This Court heard testimony that between the time of Mr. Bleichfeld's arrest and the search of the luggage, a delay ensued during which the officers waited on the train platform until an Amtrak employee passed by, then waited for a luggage cart, transported Mr. Bleichfeld and his luggage to the Sergeant's office, and contacted police headquarters and spoke with AUSA Andary.

search, the luggage was no longer accessible to Mr. Bleichfeld. It was in the exclusive control of the police officers, safe from all tampering. In fact, as Captain Suave testified, the luggage could have been left in the Sergeant's office for a number of hours, if necessary, while a search warrant was obtained.

This is the type of situation covered by *Chadwick*. The search incident to arrest exception, while somewhat flexible, does not contemplate searches that are this remote in time or place from the time of arrest. In fact, Detective Beard testified at the preliminary hearing before Magistrate Robinson on August 19, 1988, that the bags were not searched incident to arrest. Preliminary Hearing Transcript, p. 14:14–19. Furthermore, the officers originally intended to obtain a search warrant. Motions Hearing Transcript, June 21 1990, p. 24:24–5; 29:3; 31:16–21. In a nearly identical case some nine days earlier, Captain Suave did, in fact, obtain a search warrant in order to search the luggage of a man arrested on a train at Union Station after the man and his luggage were brought to the Sergeant's office. *See United States v. Trayer*, 898 F.2d 805, 807 (D.C.Cir.1990).

During the hearing before this Court on the suppression motion, counsel for the government introduced a new theory attempting to justify the officers' opening of Mr. Bleichfeld's luggage without a warrant. He claimed that the officers were entitled to open Mr. Bleichfeld's luggage in order to inventory the property seized. The search cannot be justified on the basis of such an after the fact rationalization. The search was undeniably undertaken as a purported search incident to arrest. As ASUA Andary testified, there would have been no grounds to maintain Mr. Bleichfeld under arrest if the suitcases had not been opened and evidence of a purported "crime" uncovered. The discovery of the money was not inevitable, because if the luggage had not been searched, Mr. Bleichfeld would have been released and there would have been no opportunity for a so-called inventory search. Motions Hearing Transcript, pp. 34–6.

After the police officers discovered the currency and related evidence, the government presented a criminal complaint charging Mr. Bleichfeld with interstate and foreign travel and transportation in aid of racketeering enterprises, 18 U.S.C. § 1952(a). United States Magistrate Deborah Robinson made a finding of probable cause against Mr. Bleichfeld and bound the case over to the grand jury. However, the government never indicted Mr. Bleichfeld, and his bond was returned six months after his arrest. The currency and the related evidence were retained for forfeiture purposes.

This Court commends the officers for conferring with AUSA Andary and for their good police work. The Court notes that Mr. Bleichfeld, who has asserted his Fifth Amendment right not to testify, is completely unable to offer any legitimate reason for possessing a suitcase filled with an extraordinarily large amount of cocaine-laced cash. It is with great reluctance that this Court concludes that the evidence must be suppressed. Because so much is at stake in this case, if the government determines that it is unable to proceed any further with its forfeiture case, this Court is inclined to stay effectiveness of its Order to permit the government to seek an expedited review of this decision.

This Court finds that the warrantless search of Mr. Bleichfeld's luggage violated the Fourth Amendment. Therefore, the $639,558 and the accompanying evidence found as a consequence of that search must be suppressed.

An Order accompanies this Opinion.

## ORDER

Upon consideration of claimant's motion to suppress, the government's opposition thereto, oral argument and the entire record in this case, it is hereby,

ORDERED, that claimant's motion to suppress is GRANTED, and that all the evidence discovered pursuant to the search

be suppressed and all fruits of that search be suppressed; and it is further

ORDERED, that the parties appear on Monday, December 3, 1990, at 10:00 a.m., in order to inform this Court how the government plans to proceed.