*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1966**

State of Minnesota,
Respondent,

vs.

Gerald Dwayne Judkins,
Appellant.

**Filed September 6, 2016**
**Affirmed**
**Ross, Judge**

St. Louis County District Court
File No. 69VI-CR-14-1656

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota; and

Bonnie A. Thayer, Assistant County Attorney, Virginia, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Deputies watching through the window of a home where they were planning to execute an arrest warrant saw five people, including Gerald Judkins, smoking methamphetamine. After deputies entered and arrested Judkins, he removed his jacket, ostensibly to facilitate his handcuffing. The arresting deputy took Judkins to a squad car and returned to retrieve and search the jacket, finding methamphetamine. In this appeal after Judkins's conviction for possession of a controlled substance, we must decide whether the jacket search was constitutional. Although the search occurred after Judkins was placed in the squad car and the search therefore cannot be justified by the search-incident-to-arrest rationales of securing dangerous weapons or preventing evidence destruction, the search was valid because it constituted a search of the arrestee's person and was not a substantial additional intrusion on Judkins's privacy beyond his arrest.

## FACTS

St. Louis County deputies approached a Mountain Iron home to execute a warrant to arrest D.M.  The deputies stood outside and saw through a window that five people were sitting around a table smoking what appeared to be methamphetamine. A man came outside and the deputies confronted him, asking if D.M. was inside. He said she was, and the deputies entered.

The deputies saw drug paraphernalia on a table and arrested everyone in the house, including Gerald Judkins.

2

When it was Judkins's turn to be handcuffed, Sergeant Grant Toma had difficulty handcuffing him because Judkins wore a bulky jacket. Judkins offered to remove his jacket, and after he did, Sergeant Toma placed it on a chair. The sergeant handcuffed and frisked Judkins, walked him outside, and secured him in a squad car. Sergeant Toma reentered the home to help the other deputies photograph the table and collect the evidence. Sergeant Toma picked up Judkins's jacket and searched the pockets, where he found Judkins's wallet, Judkins's cell phone, and an eyeglasses case holding plastic bags containing methamphetamine.

The state charged Judkins with second-degree possession of methamphetamine under Minnesota Statutes section 152.022, subdivision 2(a)(1) (2014). Judkins moved to suppress the evidence of the methamphetamine discovered in his jacket, arguing among other things that it resulted from an unconstitutional search. The state argued that the search was valid as incidental to Judkins's arrest and, alternatively, that the deputies would have inevitably discovered the drugs by eventually completing an inventory search.

The district court conducted a hearing and denied Judkins's motion to suppress, holding that the jacket search fell under the search-incident-to-arrest exception to the warrant requirement. The district court did not make any findings or ruling about the state's inevitable-discovery argument.

The parties agreed to proceed to a bench trial under Minnesota Rule of Criminal Procedure 26.01, subdivision 4, allowing Judkins to appeal the district court's denial of his motion to suppress. The district court found Judkins guilty of second-degree possession. Judkins appeals.

**D E C I S I O N**

On appeal of a motion to suppress evidence, we review a district court's fact-findings for clear error and its legal conclusions de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). Here the facts are undisputed, so our review is entirely de novo. *See State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. A warrantless search is presumed unconstitutional so that the evidence obtained in the search is suppressed. *See State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003). But evidence found during a warrantless search may be admissible if the circumstances fall under an exception either to the warrant requirement or to the exclusionary rule. *See id.*

The district court held that the jacket search was constitutional under an exception to the warrant requirement, specifically, search incident to a valid arrest. Under the search-incident-to-arrest exception, police may search the arrestee's person and the area within his immediate control. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969); *State v. Robb*, 605 N.W.2d 96, 100 (Minn. 2000). Judkins argues that the search cannot be justified as a search incident to arrest because he was already locked in the squad car and separated from his jacket at the time of the search, making it unnecessary for the deputies either to secure any weapon in the jacket or to prevent him from destroying any evidence in the jacket. We reject Judkins's search-incident-to-arrest argument because it conflates a search of the area around an arrestee with a search of the arrestee's person.

4

The search of the area around an arrestee within his immediate control (as opposed to a search of the arrestee himself) rests on either of two justifications: (1) police need to find and remove any weapons the arrestee might use to resist arrest or to escape, or (2) police need to prevent the arrestee from concealing or destroying evidence. *See Chimel*, 395 U.S. at 762–63, 89 S. Ct. at 2040. The *Chimel* Court stated that these rationales mark the only justifications for an area search, and it defined the area within an arrestee's "immediate control" as "the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

The United States Supreme Court more recently explained in *Arizona v. Gant* that a search under *Chimel*'s reasoning "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. 332, 343, 129 S. Ct. 1710, 1719 (2009). The *Gant* Court therefore scored a correction, clarifying that the area within the arrestee's immediate control referred to the area *at the time of the search*, not *at the time of the arrest*. Judkins is correct that the search therefore cannot be validated under *Chimel* and *Gant* as a search of his immediate area; at the time of the jacket search, the jacket was not in his immediate area.

But the state correctly emphasizes that a search of the arrested person incident to arrest differs fundamentally from a search of the immediate area incident to arrest. And the caselaw establishes that a search of the arrestee's person incident to the arrest is constitutional regardless of the arrestee's ability to access weapons or evidence at the time

5

of the search. We first address how a search of the person differs from a search of the area. We then consider whether the jacket is part of the "person" in this case.

The United States Supreme Court has long indicated that searches of the arrestee's person incident to arrest fundamentally differ from searches of the area within the arrestee's immediate control. In *United States v. Robinson*, for example, the Court observed that the warrant exception under a search incident to arrest "has historically been formulated into two distinct propositions," which have been treated "quite differently." 414 U.S. 218, 224, 94 S. Ct. 467, 471 (1973). Under the first proposition, the officer may search "the *person* of the arrestee by virtue of the lawful arrest;" under the second, the officer may search the area within the arrestee's immediate control. *Id.* Although the temporal and physical scope of the area within the arrestee's immediate control has been much debated and qualified, *Robinson* contrastingly recognized "the unqualified authority of the arresting authority to search the person of the arrestee." *Id.* at 225, 94 S. Ct. at 472; *cf. Weeks v. United States*, 232 U.S. 383, 392, 34 S. Ct. 341, 344 (1914) (acknowledging the right of the government "always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime").

In a recent opinion, the Supreme Court recognized that *Chimel*'s twin rationales, necessarily based on the "heightened government interests at stake in a volatile arrest situation," are not the only bases for the search-incident-to-arrest warrant exception. *Riley v. California*, 134 S. Ct. 2473, 2488 (2014). The Court observed that, when it comes to searches of the person, the doctrine is also based on "an arrestee's reduced privacy interests upon being taken into police custody." *Id.*; *see also United States v. Chadwick*, 433 U.S. 1,

6

16 n.10, 97 S. Ct. 2476, 2486 n.10 (1977) (differentiating the rationales between searches of the immediate area and searches of the person by explaining that only the latter can be justified by "reduced expectations of privacy caused by the arrest"). The *Riley* Court referenced *Robinson*'s favorable treatment of then-Judge Cardozo's explanation of the exception that "the law is in the act of subjecting the body of the accused to its physical dominion." *Riley*, 134 S. Ct. at 2488 (indirectly quoting *People v. Chiagles*, 142 N.E. 583, 584 (N.Y. 1923)). *Riley* recognized that "inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself." *Id.* at 2489. It reasoned that the search of the arrestee in *Robinson* was constitutional because the pat down of an arrestee's clothing constitutes "only minor additional intrusions compared to the substantial government authority exercised in taking Robinson into custody." *Id.*; *cf. id.* at 2495–96 (Alito, J., concurring) (opining that the search-incident-to-arrest exception is not primarily based on *Chimel*'s twin rationales and noting historical support for searches of the arrestee to obtain evidence for the arrestee's prosecution).

We conclude that a search of the person of an arrestee is distinct from a search of the area within the arrestee's immediate control and subject to the bounds of the arrestee's privacy interests, rather than limited in scope by the arrestee's ability to access weapons or to destroy or conceal evidence. We recognize that Justice Alito's opinion in *Birchfield v. North Dakota* states that *Riley*, which had addressed a search for digital data as opposed to tangible objects, suggested that a privacy analysis applies to situations that "could not have been envisioned when the Fourth Amendment was adopted." 136 S. Ct. 2160, 2176 (2016). But we do not believe that this dicta undercuts *Riley*'s explanation that a physical search

7

of the arrestee's person is justified by the lack of an additional privacy intrusion beyond taking possession of the person. Nor does it diminish the authority of the caselaw *Riley* relied on to develop its reasoning. *See Riley*, 134 S. Ct. at 2488–89.

Applying this standard, we conclude that the search of Judkins's jacket can be justified if the jacket was part of his person. We hold that it was. Judkins argues that the person includes only those items on the arrestee's body at the time of the search, and the state argues that the arrestee's person is defined at the time of the arrest. The state has the better position. Because the justification for a search of the person (as opposed to the justification for a search of the area immediately around the person) arises from the lack of "substantial additional intrusion on privacy beyond the arrest itself," *id.* at 2489, it follows that a search of everything that constitutes the person can occur without a warrant either during or after the arrest. The privacy intrusion that justifies the search at the time of arrest corresponds to the loss of liberty associated with the arrest. It is not surprising then that an arresting officer may search the arrestee's person at the moment of the arrest; an officer who transports the arrestee to jail might later search the arrestee again on the same justification; and a jailer might additionally search the arrestee on his arrival to jail. *United States v. Edwards*, 415 U.S. 800, 803, 805, 94 S. Ct. 1234, 1237–38 (1974).

The deputy seized Judkins's person by arresting him, and the seizure of his person included all the clothing that Judkins wore at the time. Judkins was wearing his jacket. After the deputy placed Judkins under arrest but before he searched him, he handcuffed him. The deputy therefore had already seized the jacket and lawfully possessed it as part of Judkins's person even before Judkins removed it. That Judkins removed the jacket after

8

the arrest and during the handcuffing procedure is not constitutionally significant; nothing in the caselaw Judkins cites suggests that the post-arrest removal of clothing from an arrested person removes the clothing from the scope of the officer's lawful seizure and search of it. The deputy's momentarily placing the jacket aside to effect the cuffing is of no more constitutional consequence than if he had momentarily let go of Judkins himself.

Although we rest our holding on the Supreme Court's approach to search incident to arrest of the person and the limited privacy interests of arrestees but not on any policy consideration, we observe that Judkins's argument to the contrary carries a public-policy problem. His approach would unreasonably encourage arrestees to separate themselves from the criminal evidence on their persons after they are placed under arrest. Here, for example, Sergeant Toma testified that Judkins himself suggested that removing the jacket might facilitate the handcuffing. A less mannered arrestee might endanger the officer by resisting arrest or fleeing at least long enough to toss aside any incriminating clothing. Nothing we have seen in the Constitution or caselaw suggests the distinction that Judkins advocates, and the practical implications are unfavorable.

We add that a lawful search of Judkins's person includes not only his jacket and the discovery of the eyeglasses case, it also includes the deputy's opening and searching inside the case itself. By opening the case that he found in Judkins's pocket, Sergeant Toma engaged in no more of an invasion than the officer in *Robinson*. The *Robinson* Court held that the officer did not search unconstitutionally by opening a cigarette pack he found in the arrestee's pocket, discovering heroin pills. *See Robinson*, 414 U.S. at 223–24, 94 S. Ct. at 471. The case that the deputy opened here is typical of a variety of personal items that

9

courts have approved for opening and searching incident to arrest. *See, e.g.*, *United States v. Carrion*, 809 F.2d 1120, 1123, 1128 (5th Cir. 1987) (holding that the arrestee's billfold and address book were seized under a lawful search incident to arrest); *United States v. Watson*, 669 F.2d 1374, 1383–84 (11th Cir. 1982) (holding the seizure of a wallet from the arrestee's coat and the search of the wallet was within the scope of a search incident to arrest); *United States v. Lee*, 501 F.2d 890, 891–92 (D.C. Cir. 1974) (holding the seizure and search of arrestee's purse was incident to arrest).

Because the search of Judkins's jacket and glasses case was a search of the person causing no greater intrusion into Judkins's privacy than the arrest itself, we hold that the methamphetamine was discovered during a search incident to a lawful arrest. We need not discuss the parties' inevitable-discovery arguments. We affirm the district court's decision denying Judkins's motion to suppress.

**Affirmed.**